HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant-Respondent, v J. J. WICKS, INC., et al., Respondents, and ST. FRANCIS HOSPITAL, Respondent-Appellant.

Fourth Department, December 14, 1984

### APPEARANCES OF COUNSEL

*Smith, Murphy & Schoepperle* (*Frank G. Godson* of counsel), for appellant-respondent.

*James E. Kehoe* for respondent-appellant.

*Cole, Sorrentino, Cavanaugh, Stephenson & O'Brien, P.C.* (*Gerald O'Brien* of counsel), for J. J. Wicks, Inc., respondent.

*Williams, Williams, Volgenau & Burke* (*Maureen E. Halloran* of counsel), for George Clapp, respondent.

### OPINION OF THE COURT

SCHNEPP, J.

The issues on the appeal in this declaratory judgment action are whether the injury complained of arose out of a "completed operation" within the meaning of a policy of casualty insurance issued by Hartford Accident & Indemnity Co. and whether Hartford properly disclaimed coverage in accordance with subdivision (d) of section 3420 of the Insurance Law (formerly Insurance Law, § 167, subd 8, as renum by L 1984, ch 367). The following underlying facts are not in dispute. On September 1, 1977, St. Francis Hospital, which was in the process of renovating its operating rooms, retained J. J. Wicks, Inc., to change the adaptors on its anesthesia machines and attach new "pigtail" outlets in its operating rooms. Wicks started and completed its work on Friday, September 2, 1977, but, since the machines were not in the operating rooms, it could not perform its "normal" testing procedure and planned to return for such purpose during the next week. It did not return, however, and claimed that a hospital representative notified it that the testing "had been done". Wicks billed the hospital for the work by invoice dated September 6, 1977. The operating rooms were put into use on September 8, 1977. On that day, Paul E. London, II, underwent dental surgery at the hospital and died allegedly because the tubes from one of the anesthesia machines were crossed and he was administered nitrous oxide instead of oxygen. On September 12, 1977, Wicks, after it received notice of the incident, submitted an 11-page handwritten statement to Hartford, its insurance carrier, which detailed the nature of the "claim" and

its involvement in the incident. On October 6, 1977, Hartford gave notice to Wicks of its disclaimer under the "Completed Operations and Products Hazards" exclusion clause in the insurance policy. A "completed operations hazard" is defined in the policy in three different ways. Under the first two definitions, operations are not deemed complete until all the operations to be performed by the insured have been completed. Under the third definition, the insured's work is deemed completed when it is put to its intended use.

A wrongful death action was instituted by the defendant Paul E. London, individually and as administrator of Paul E. London, II, against the remaining defendants in the within action in February, 1979. After the complaint in the action was transmitted to Hartford on May 3, 1979, it again gave written notice of disclaimer to Wicks under date of May 23, 1979. The instant declaratory judgment action was commenced on September 29, 1979. Following completion of the examination before trial of representatives of Wicks and the hospital and completion of discovery of certain documents, Hartford moved for an order granting summary judgment. The hospital made a cross motion for summary judgment in its favor and in favor of the plaintiff in the underlying action.

Special Term denied summary judgment to Hartford because it determined that an issue of fact existed as to whether Wicks' work was completed and whether the work was put to its intended use. It also denied the hospital's cross motion for summary judgment which was based on the theory that Hartford had not given timely notice of its disclaimer to the hospital and the defendant London, plaintiff in the underlying action. The court denied this motion because it concluded that the allegation of untimely notice should have been pleaded as an affirmative defense. It held, however, that the denial was without prejudice to the hospital's application for leave to amend its answer.

The hospital later made such motion and alleged that the untimely notice issue had not been pleaded as an affirmative defense because Hartford knew of its failure to disclaim appropriately and the defense would not have taken Hartford by surprise. In addition, it claimed that Hartford has the burden to show the validity of its disclaimer and that, in any event, the amendment would not prejudice Hartford. Hartford appeals from the grant of this relief to the hospital as well as from the denial of its motion for summary judgment. The hospital appeals from the denial of its cross motion for summary judgment.

In our view, Hartford's motion for summary judgment against Wicks may be supported under the third definition of completed operations, i.e., that the insured's work was put to its intended use. Under the first two definitions, Special Term was correct in finding the existence of questions of fact on whether the entire job was completed by the insured. Conflicting affidavits were submitted on this issue and this factual dispute may not be resolved on a summary judgment motion. However, under the third definition, it is undisputed that the anesthesia equipment was used by the hospital during the surgery which resulted in the death and that this equipment was intended to be used during such operations.

The defendants claim that the anesthesia equipment was not used as "intended" because it malfunctioned. This interpretation of the policy is unreasonable since there is no requirement under the exclusion that the machines work properly. To interpret the policy in this way would render the exclusion completely meaningless. The defendants' interpretation would only exclude coverage for injuries caused by properly operating machines for which there would be no liability. The insured could only face liability if the machines malfunctioned in some way. The defendants' interpretation would, therefore, only exclude coverage for injuries for which the insured could not be liable and would never exclude coverage for injuries for which it could be liable. The exclusionary clause is unambiguous and it is susceptible of only one interpretation. The anesthesia machine was clearly put to its intended use and liability for the injuries caused by such use is expressly excluded.

The two other definitions of completed operations do not have to be satisfied because the policy clearly provides that the applicable definition would be the one that first occurs. If the work is put to its intended use before the operations to be performed by the insured have been completed under the first two definitions, then it is considered complete under the intended use definition. There is no ambiguity in the terms of the policy presenting a question of fact and, even if there were, defendants have not shown any extrinsic evidence that would have to be reviewed in order to resolve the ambiguity. The interpretation of this policy is therefore a matter of law and Special Term erred in not granting Hartford's motion for summary judgment against Wicks (see *Hanover Ins. Co. v Hawkins,* 493 F2d 377).

Although Hartford was entitled to summary judgment against its insured, in our view the hospital as a claimant and the plaintiff in the underlying action as representative of the

injured person were also entitled to summary judgment against Hartford under subdivision (d) of section 3420 of the Insurance Law which provides that an insurer shall give written notice of disclaimer "as soon as is reasonably possible * * * to the insured and the injured person or any other claimant." Hartford sent disclaimer letters to Wicks on October 6, 1977 and again on May 23, 1979, but it never gave any notice to the hospital and the injured person that it intended to disclaim until it served the complaint in this declaratory judgment action on or about September 29, 1979, more than two years after Wicks had provided it with the 11-page summary of the facts.

Hartford argues that it had no duty to give the hospital notice of disclaimer because the hospital's status as a claimant is "doubtful at best" and because it had no duty to give notice of disclaimer until discovery in the wrongful death action was completed. We disagree. The hospital is clearly a claimant within the meaning of section 167 of the Insurance Law because Wicks may be completely or partially liable for the plaintiff's damage in the wrongful death action and thus liable to the hospital on its cross claims for indemnification and contribution.

Even if the declaratory judgment complaint could be considered notice of disclaimer to the liability plaintiff and the hospital, it was not served until more than two years after Hartford had sufficient information about the accident to send a disclaimer to Wicks. Hartford has never alleged that it did not know at that time the identity of the injured person and who the potential claimants were. In any event, Hartford must have known that the hospital was a potential claimant when it received the wrongful death complaint naming the hospital in May, 1979. Thus, while Hartford's delay could be considered to be seven years, i.e., from September, 1977 to the present, at the very least its delay was four months, i.e., from April, 1979 to September, 1979, which, in view of the statutory provision requiring notice "as soon as is reasonably possible", was unreasonable as a matter of law (see *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028, 1029).

Hartford argues that it should be excused from strict compliance with the statute because of an alleged lack of prejudice. However, the insurer may be denied the opportunity to disclaim on the basis of an exclusionary clause even if the insured or other claimant has not been prejudiced (*Allstate Ins. Co. v Gross,* 27 NY2d 263, 269-270; *Western World Ins. Co. v Jean & Benny's Rest.,* 69 AD2d 260, 263; *Foremost Ins. Co. v Sotiriou,* 66 AD2d 812; *Preisch v Continental Cas. Co.,* 55 AD2d 117, 122). Nor,

does the notice to Wicks operate as a disclaimer as to any claimant who has not received proper notice from the insurer (*John v Centennial Ins. Co.,* 91 AD2d 1104, 1105; *Preisch v Continental Cas. Co.,* 55 AD2d 117, 122-123, *supra*).

For all these reasons, neither the liability plaintiff nor the hospital as a claimant has received timely notice of Hartford's intention to disclaim. Therefore, Hartford cannot disclaim liability as against them and the hospital's motion for summary judgment should have been granted.

The defense of no disclaimer did not have to be asserted as an affirmative defense. Hartford is presumed to know that written notice of disclaimer must be given not only to the insured but also to the injured person and other claimants. The claim by the hospital that it was a claimant could not have taken Hartford by surprise because it knew in September, 1977 that the operation was performed at the hospital and was again notified of this fact when it received the wrongful death complaint in April, 1979 (see CPLR 3018, subd [b]). Lack of notice of disclaimer did not have to be pleaded affirmatively because Hartford should have been prepared for this issue and at least prepared to satisfy its burden to explain its delay (see *Zappone v Home Ins. Co.,* 55 NY2d 131, 135; *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028, 1030, *supra*). Thus, summary judgment did not have to await receipt of the hospital's amended answer and Special Term should have granted the motion without the requirement of an amendment. In any event, judicial economy, and the procedural posture and substantive nature of this case require that the hospital's motion for summary judgment should be granted at this time.

We note that both the insurance policy and the Insurance Law (§ 3420, subd [a], par [2], formerly § 167, subd 1, par [b]) provide the right of direct action against the insurer to establish the improper disclaimer and to collect the unsatisfied judgment (see *John v Centennial Ins. Co.,* 91 AD2d 1104, *supra; Preisch v Continental Cas. Co.,* 55 AD2d 117, *supra*). Here, a direct action against Hartford would be an appropriate way to enforce any established right to the insurance proceeds (see *Guercio v Hertz Corp.,* 40 NY2d 680, 686).

Accordingly, the order of Special Term should be reversed and the rights of Hartford and defendants hospital and London declared in accordance with this opinion. The appeal from the order granting the hospital leave to amend its answer should be dismissed as moot.

DENMAN, J. P., BOOMER, GREEN and O'DONNELL, JJ., concur.

Order unanimously reversed, on the law, without costs, and judgment granted in accordance with opinion by Schnepp, J.