[806 NYS2d 53]

Bovis Lend Lease LMB, Inc., et al., Respondents, v Royal
Surplus Lines Insurance Company, Appellant.

First Department, December 15, 2005

**APPEARANCES OF COUNSEL**

*Coughlin Duffy Kelly Lisovicz Midlige & Wolff, LLP*, New York City (*Kevin E. Wolff, Daniel F. Markham* and *Aaron Van Nostrand* of counsel), for appellant.

*Newman Fitch Altheim Myers, P.C.*, New York City (*Howard B. Altman* and *Abraham S. Altheim* of counsel), for respondents.

**OPINION OF THE COURT**

ELLERIN, J.

In this insurance coverage case, the main issue before us is whether defendant Royal Surplus Lines Insurance Company complied with the mandate of Insurance Law § 3420 (d), which requires that an insurer intending to disclaim liability or deny coverage under a liability policy give prompt written notice of such disclaimer of liability or denial of coverage "to the insured and the injured person or any other claimant." A related issue, although not of dispositive consequence in the instant case, is whether section 3420 (d) applies vis-à-vis an insurer intending to disclaim liability against another insurer who covers the same insured.

This action has its genesis in an earlier suit brought by Dennis Winter, an employee of nonparty Millennium Masonry, Inc.

(Millennium), who was injured on September 14, 2002, when he fell from a height while working on the construction of a new faculty residence for plaintiff The Trustees of Columbia University in the City of New York (Columbia) at 110th Street and Broadway. Plaintiff Bovis Lend Lease LMB, Inc. (Bovis) was the construction manager, pursuant to agreement with Columbia, and had contracted with Millennium for the masonry and brick work on the project. Two commercial general liability insurance policies were in effect at the time of Winter's fall: one issued by plaintiff National Union Fire Insurance Company of Pittsburgh, PA (National Union), to Bovis, naming Columbia as an additional insured, and the other issued by defendant Royal Surplus Lines Insurance Company (Royal) to Millennium, naming Bovis and Columbia as additional insureds. Each policy, written on a standard Insurance Services Offices form, contains the following "Insuring Agreement," in pertinent part:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

On November 12, 2002, Winter, the injured employee, commenced an action against both Bovis and Columbia alleging negligence and violations of the Labor Law. In March 2003, Bovis and Columbia commenced a third-party action against Millennium. National Union undertook the defense of Bovis and Columbia in the Winter action. By letter dated February 28, 2003, National Union tendered the defense and indemnification of Bovis and Columbia to Royal. Royal acknowledged the claim on March 3, 2003 and advised that it was commencing its investigation. Two and a half months later, by undated letter received by plaintiffs on May 21, 2003, Royal rejected the tender, disclaiming liability based on a "New Residential Work or Products Exclusion" in the Millennium policy. The letter was addressed to Millennium and National Union's claim representative, with copies to counsel for Winter, the injured employee and plaintiff in the underlying action, and to counsel for the insureds Bovis and Columbia. The letter stated that "Royal will

not provide a defense or indemnification to Millenium [*sic*] in connection with the third-party action, nor will Royal provide a defense or indemnification to Bovis or Columbia in connection with the Underlying Action and tender for same is hereby rejected."

Meanwhile, on April 9, 2003, plaintiffs—i.e., National Union and the insureds Bovis and Columbia—had instituted this action for a judgment declaring that Royal was obligated under the policy to fully insure, defend and indemnify Bovis and Columbia in the still-pending personal injury action and to reimburse National Union for its attorneys' fees, costs, disbursements and other expenses incurred in the defense of that action. On August 22, 2003, Royal moved for a judgment declaring that it had no duty to defend or indemnify Bovis or Columbia, based on the above-cited policy exclusion, and for summary judgment dismissing the complaint. Plaintiffs contended in opposition that Royal's disclaimer of liability was untimely under Insurance Law § 3420 (d) as a matter of law and therefore ineffective. In reply, Royal argued that section 3420 (d) is not available to an insurer to be asserted against another insurer, that, in any event, its disclaimer was timely under the circumstances, and that it had provided a reasonable excuse for any delay. The motion court denied Royal's motion, finding that section 3420 (d) applied to notice given by one insurer to another, and that the notice here given by Royal was untimely as a matter of law, thereby precluding consideration of the merits of the exclusion involved.

While we agree with the ultimate result reached by the motion court, we reject the court's holding that Insurance Law § 3420 (d) applies to notice given by one insurer to another.

Insurance Law § 3420 (d) provides:

> "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."

The statute clearly mandates that an insurer must as soon as is reasonably possible give written notice of disclaimer of liability or denial of coverage for death or bodily injury under a

liability policy to "the insured." Thus, the threshold issue here with respect to the insureds Bovis and Columbia is whether Royal's undated written disclaimer notice was given as soon as reasonably possible. It is uncontroverted that such notice was received on May 21, 2003. In most cases, the timeliness of an insurer's notice of disclaimer "will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage" (*First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 70 [2003]). However, where the basis for the disclaimer was or should have been readily apparent before the onset of the delay, any explanation by the insurer for its delay will be insufficient as a matter of law, and where the basis was not readily apparent, an unsatisfactory explanation will render the delay unreasonable as a matter of law (*id.* at 69).

Here, Royal received notice of the claim against third-party defendant Millennium from National Union's claim representative on March 3, 2003, and assigned the claim to Claims Specialist Christopher Corhan. On that date, Mr. Corhan acknowledged receipt of the tender, advised that he was initiating an investigation into the facts of the loss and the coverage issues presented in the claim, requested a copy of the contract between Bovis and Millennium, and advised that Royal was not accepting or rejecting the claim at that time. The notice of the claim it received on March 3 did not give Royal sufficient notice on its face of any ground on which to disclaim, because it located the incident at "Columbia University Housing and Faculty Residence," with no indication that the project involved *new* residential property. However, on March 20, 2003, Royal received the Bovis-Millennium contract, which does indicate the nature of the project. Thus, while Royal learned of the grounds for a disclaimer as early as March 20, 2003, it did not give written notice of disclaimer until almost 60 days later, on May 14, 2003, the date on which it alleges the undated letter was issued, although it was not received by plaintiffs until May 21, 2003. Moreover, Royal received its own investigator's report, which included the information that the project was new construction and included residential apartments, on April 8, 2003. Thus, even measuring from the latest date on which Royal learned of the grounds for a disclaimer, i.e., April 8, 2003, Royal's notice of disclaimer was not issued until 36 days later.

Royal's explanation for the delay is that on March 10, 2003, Mr. Corhan had advised Royal that he was resigning effective

March 21 and would be taking the week of March 17 as vacation. Royal alleges that although it took immediate steps to replace Mr. Corhan, his eventual replacement, Therese Huber, was unable to start work until April 28. Royal points out, however, that Ms. Huber completed her investigation, requested and received advice from coverage counsel, and issued the disclaimer letter in only 17 days.

Royal argues that the situation caused by Mr. Corhan's unexpected resignation was beyond its control, and that therefore the delay in issuing the notice of disclaimer was reasonable. In support of this argument, Royal cites *New York Univ. v First Fin. Ins. Co.* (322 F3d 750, 755 [2d Cir 2003]), in which the federal court found that New York State courts have held notification delays to be reasonable "when an external factor beyond the insurer's control unexpectedly interferes with the insurer's ability to investigate the claim in a timely fashion." Two examples from this Court were cited. In *Stabules v Aetna Life & Cas. Co.* (226 AD2d 138 [1996]), we held that the failure of the insurer's computer tracking system to discover the insured's notice of claim excused the insurer's delay in notification, and in *Norfolk & Dedham Mut. Fire Ins. Co. v Petrizzi* (121 AD2d 276 [1986], *lv denied* 68 NY2d 611 [1986]), we held that the insurer's delay while it waited to interview the insured, who had just given birth, was reasonable.

It is readily apparent that Royal's staffing problem was not an external factor beyond its control like a computer system failure or the need to wait for a more convenient time to interview a woman who has just delivered a baby. Indeed, the motion court found that Royal's need to replace its claims specialist while it was investigating the Winter claim was "irrelevant" and observed that "[p]laintiffs should not have to wait until their insurer sorts out its employment affairs before receiving timely notice of a disclaimer."

We find, therefore, that the court properly held that the notice of disclaimer was untimely as a matter of law (*see e.g. West 16th St. Tenants Corp. v Public Serv. Mut. Ins. Co.*, 290 AD2d 278 [1st Dept 2002], *lv denied* 98 NY2d 605 [2002] [30 days unreasonable as a matter of law where sole ground on which coverage was disclaimed was insured's delay in notifying insurer of occurrence]; *Matter of Colonial Penn Ins. Co. v Pevzner*, 266 AD2d 391 [2d Dept 1999] [same for 41-day delay]; *Campos v Sarro*, 309 AD2d 888 [2d Dept 2003] [39-day delay unreasonable after receipt of sufficient facts to disclaim on basis

of homeowner's policy exclusions for injuries sustained in connection with insured's business and by individuals for whom insured was obligated to procure workers' compensation insurance; explanation for delay too vague]; *Squires v Marini Bldrs.*, 293 AD2d 808, 810 [3d Dept 2002], *lv denied* 99 NY2d 502 [2002] [insurer waited 42 days after receiving plaintiff's complaint, which alleged his employment status, the sole factor in determining whether to deny coverage, and did not assert that it had any reason to doubt the allegations of the complaint]; *Matter of Nationwide Mut. Ins. Co. v Steiner,* 199 AD2d 507 [2d Dept 1993] [unexplained 41-day delay in disclaiming on ground of untimely notice of accident]).

In view of our finding that Royal's notice of disclaimer to Bovis and Columbia was untimely as a matter of law and therefore of no effect, we need not reach the issue of whether the disclaimer was valid as to these parties.

We turn next to the question of the applicability of section 3420 (d) to National Union, the other insurer of Bovis and Columbia. In reaching a determination on that issue, we must look to the express language of the statute and its underlying purposes.

A statute must be construed so as to effectuate the intent of the Legislature, and the clearest indicator of the legislative intent is the plain meaning of the language (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Here, the statute clearly mandates that an insurer must as soon as is reasonably possible give written notice of disclaimer of liability or denial of coverage for death or bodily injury under a liability policy to "the insured and the injured person or any other claimant." (Insurance Law § 3420 [d].) Consistent with the purpose of liability insurance, i.e., to provide coverage for liability to third parties, the plain meaning of the quoted language is that an insurer must give prompt written notice of disclaimer of liability or denial of coverage not only to the insured but also to any party that has *a claim against the insured arising under the policy* (*see e.g. Hartford Acc. & Indem. Co. v J. J. Wicks, Inc.*, 104 AD2d 289, 293 [1984], *appeal dismissed* 65 NY2d 691 [1985] [where patient died allegedly because of anesthesia equipment improperly refitted by contractor, contractor's insurer was held obligated to give timely notice of disclaimer to contractor, and to plaintiff in wrongful death action, and to hospital]). The purpose of section 3420 (d) is "to protect the insured, the injured person, and any other interested party who has a real

stake in the outcome, from being prejudiced by a belated denial of coverage" (*Excelsior Ins. Co. v Antretter Contr. Corp.*, 262 AD2d 124, 127 [1999]).

■ A review of the statutory language itself demonstrates that another insurer does not fall within the specified categories. National Union is certainly not Royal's insured, nor is it an injured person or other party (i.e., claimant) who has a claim against the insured arising under the Royal policy. No extended discussion is necessary for the elementary proposition that an insurer can have no liability claim against its own insured for the risk covered (*see Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 471-472 [1986]).

That section 3420 (d) was never intended to apply to another insurer is buttressed by a review of the various other provisions of section 3420 and their emphasis on protecting the insured and those who have claims against the insured covered by the liability insurance policy in issue. For example, section 3420 (a) requires that policies insuring against liability for injury to person or injury to or destruction of property contain certain standard provisions "or provisions which are equally or more favorable to the insured." Among these are the provision that where a judgment against the insured in an action for damages for injury, loss or damage remains unsatisfied after 30 days from service of the notice of entry on the insured's attorney, or the insured, and the insurer, an action may be maintained against the insurer (subd [a] [2]).

> "[T]he Legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted [the forerunner of section 3420] to create . . . an independent right of the injured person to proceed directly against the liability insurer" (*Lauritano v American Fid. Fire Ins. Co.*, 3 AD2d 564, 567 [1957], *affd* 4 NY2d 1028 [1958]).

The language requiring the insurer to give written notice of disclaimer of liability or denial of coverage " 'as soon as is reasonably possible' leave[s] no doubt that [the Legislature] intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously" (*First Fin. Ins. Co.*, 1 NY3d at 68). The 30-Day Budget Report on the bill that ultimately became section 3420 (d) (Bill Jacket, L 1975, ch 775) also evinces the Legislature's intent that section 3420 (d)

not be applied to insurers. The Report stated that "[t]he purpose of this bill is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied." (*Id.*) It continued:

"This bill would prevent insurance companies from deliberately engaging in dilatory practices which inhibit the fair and expeditious resolution of liability claims. By expediting the disclaimer or denial process, the consumer is able to pursue, at an earlier point in time, an alternative method of recovering liability damages." (*Id.*)

Approval was recommended on the ground that "[i]t is in the interests of protecting the consumer to prevent undue delay in the adjudication of cases involving liability insurance coverage, particularly where settlement fees are necessary to pay medical and legal expenses." (*Id.*)

It is clear that the notice requirement of section 3420 (d) is designed to protect the insured and the injured person or other claimant against the risk, posed by a delay in learning the insurer's position, of expending energy and resources in an ultimately futile attempt to recover damages from an insurer or forgoing alternative methods for recovering damages until it is too late to pursue them successfully (*see Allstate Ins. Co. v Gross*, 27 NY2d 263, 267 [1970]; *Aetna Cas. & Sur. Co. v Dimino*, 40 AD2d 1076 [1972]; *Appell v Liberty Mut. Ins. Co.*, 22 AD2d 906, 907 [1964], *affd* 17 NY2d 519 [1966]).

Recognizing that these are not risks to which another insurer seeking contribution is subject, courts have held that section 3420 (d) is not applicable to a request for contribution between coinsurers (*see Tops Mkts. v Maryland Cas.*, 267 AD2d 999, 1000 [4th Dept 1999]; *accord AIU Ins. Co. v Investors Ins. Co.*, 17 AD3d 259, 260 [1st Dept 2005]). In *AIU*, this Court found that "AIU received notice of the accident, conducted an investigation, undertook the defense of the lawsuit and managed the defense on its own for four years. Manifestly, it has not been prejudiced by any late disclaimer by Investors." (*Id.*)

The fact that National Union seeks from Royal not contribution but the full defense and indemnity of Bovis and Columbia in the underlying personal injury action does not alter the analysis. National Union's ability to defend and/or indemnify Bovis and Columbia is not affected by a delay in learning of Royal's position. Indeed, National Union apparently has been providing

the defense of the underlying action for nearly three years. Whether it seeks contribution or full coverage, National Union is not "within the zone of interest which the statutory requirement of notice to the injured parties seeks to protect" (*Batchie v Travelers Ins. Co.*, 130 AD2d 536, 537 [1987]), and thus we hold that, insofar as plaintiff National Union is concerned, section 3420 (d) has no application, and Royal's disclaimer is not untimely.

Upon our finding that Royal's written disclaimer is timely vis-à-vis National Union, the issue of the validity of the disclaimer becomes relevant with respect to any claims National Union may have.

Royal's disclaimer is predicated upon the "New Residential Work or Products Exclusion" endorsement, which provides:

> "Designated Work/Products(s): 'Your work' or 'your products' in any way associated with new residential property. For the purpose of this endorsement, 'new residential property' shall include the original construction of apartments, single family and multi-family dwellings, condominiums and townhouses, regardless of when the construction operations take place.

> "This insurance does not apply to 'bodily injury,' 'property damage,' 'advertising injury' or 'personal injury' arising out of any of 'your work' or 'your products' shown in the SCHEDULE above."

Royal argues that this exclusion is applicable to the third-party claims against Millennium, because they "clearly arise from the construction of a new faculty residence."

> "To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision" (*Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997]).

Millennium's policy excludes " 'Your work' or 'your products' in any way associated with new residential property [, which] shall

include the original construction of apartments, single family and multi-family dwellings, condominiums and townhouses."

■ The Bovis-Millennium contract makes it clear that the construction project is a mixed-use building. The cover page of the contract identifies it as "Columbia University School & Faculty Residence," and the individual contract documents refer to the project as either "Columbia University Faculty Residence and School" or "Columbia University School and Faculty Housing." Royal argues that the exclusion does not require that the new construction be exclusively residential. However, "mixed-use buildings" are not included in the exclusion's list of the types of buildings that constitute residential property. Indeed, only specific single-use dwellings are included in the list, and it certainly is reasonable to interpret the exclusion as inapplicable to mixed-use buildings. Thus, Royal has failed to meet its burden of establishing that the exclusion is subject to no reasonable interpretation other than the one it offers (*see Frontier*, 91 NY2d at 175), and we therefore find that the exclusion is inapplicable to Millennium's work on the Columbia project.

Finally, with respect to defense costs, we find that the motion court improperly held that Royal must reimburse National Union for all its defense costs, rather than for those incurred from the date on which Royal received National Union's tender of the underlying lawsuit (*see Smart Style Indus., Inc. v Pennsylvania Gen. Ins. Co.*, 947 F Supp 102, 103 [SD NY 1996]). Royal's claims specialist acknowledged receipt of National Union's tender by letter dated March 3, 2003. Thus, Royal is obligated to reimburse National Union for defense costs incurred only from March 3, 2003.

Accordingly, the order of the Supreme Court, New York County (Marilyn Shafer, J.), entered March 1, 2004, which denied defendant's motion for a declaratory judgment and for summary judgment, should be modified, on the law, to the extent of declaring that defendant is obligated to defend and indemnify plaintiffs Bovis and Columbia as additional insureds under the liability policy issued to nonparty Millennium Masonry, Inc., and otherwise affirmed, without costs. Order, same court and Justice, entered November 16, 2004, which denied defendant's cross motion to renew the prior motion and for a stay and granted plaintiffs' motion for summary judgment and for a declaratory judgment, should be modified, on the law, to the extent of declaring that defendant Royal is obligated to reimburse plaintiff National Union for its defense costs incurred from March 3, 2003, and otherwise affirmed, without costs.

ANDRIAS, J.P., SAXE, SULLIVAN and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered March 1, 2004, modified, on the law, to the extent of declaring that defendant is obligated to defend and indemnify plaintiffs Bovis and Columbia as additional insureds under the liability policy issued to nonparty Millennium Masonry, Inc., and otherwise affirmed, without costs. Order, same court, entered November 16, 2004, modified, on the law, to the extent of declaring that defendant Royal is obligated to reimburse plaintiff National Union for its defense costs incurred from March 3, 2003, and otherwise affirmed, without costs.