TOWER INSURANCE COMPANY OF NEW YORK, Appellant, v BCS CONSTRUCTION SERVICES CORP. et al., Defendants, and DEVI LEONARD et al., Respondents. [988 NYS2d 145]—

Order, Supreme Court, New York County (Joan M. Kenney, J.), entered December 3, 2012, which, insofar as appealed from as limited by the briefs, denied plaintiff's motion for summary judgment declaring that it had no obligation to defend or indemnify defendant BCS Construction Services Corp. (BCS) in an underlying personal injury action, affirmed, with costs.

Plaintiff issued a commercial lines insurance policy to BCS. The policy's declarations page stated BCS's "Business Description" as "Carpentry-Painting-Drywall-Plastering-Tile-Contractor." Elsewhere, the work to be covered was separated into five separate "classifications," namely, "Carpentry-

Interior," Painting-Interior-Structures," "Dry wall or wallboard install," "Plastering or stucco work," and "Tile, Stone-Interior construction." Plaintiff issued an endorsement to the policy clarifying that "[n]o coverage is provided for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of this policy." Another endorsement provided that the "policy shall not apply to [claims] arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations."

Defendants Devi and Ramesh Leonard, owners of the premises located at 2241 White Plains Road, Bronx, New York (a one-story, two-unit commercial building), orally hired BCS to serve as the general contractor for a construction project that involved adding a second and third story to the premises and installing the electrical system and plumbing throughout. BCS hired several subcontractors to perform various tasks on the project, including installation of elevators, construction of the roof and steel frame, and installation of a staircase from the basement to the third floor, as well as the electrical and plumbing work. On or about June 10, 2008, the Leonards fired BCS for performing inferior work at the project.

Nearly two years later, defendant John Farley allegedly suffered a personal injury while sitting in a parked car adjacent to the building, when the building partially collapsed, and he was hit by falling debris. Shortly thereafter, the Leonards placed plaintiff on notice of Farley's claim, asserting that "[w]hile insured was performing work on a building, they did not comply with plan and they did not perform the work properly. They left the job without completing it. A wall has collapsed. Five or six vehicles were damaged." Devi Leonard also gave a statement to an investigator hired by plaintiff, which said, inter alia, that BCS's "work was inferior and the columns placed were improper. We do not know if BCS or one of their subcontractors put up the roof, but it was done improperly." Devi Leonard also asserted that after BCS left the project they were unable to replace it, and no further work was performed on the project. Plaintiff then disclaimed coverage under the policy, based on, inter alia, the endorsements discussed above, which, again, excluded coverage "for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of this policy," and for "[claims] arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations."

Farley commenced an action against BCS and the Leonards, among others, alleging, as is relevant here, that BCS was negligent in its construction of the building. Notwithstanding its earlier disclaimer, plaintiff agreed to defend BCS in the action, subject to its right to commence this declaratory judgment action against BCS and interested parties concerning the validity of its disclaimer. In its answer BCS either denied, or denied knowledge and information sufficient to form a belief as to, the allegations that the two endorsements applied. BCS's principal, Eusebio Banks, attached a sworn statement to the answer, in which he gave a timeline of events related to BCS's involvement in the project. Banks stated that after his work permit expired, the Leonards hired a new contractor to continue the project and to make structural and mechanical changes to the building. Banks's statement is garbled and difficult to follow. However, it appears to lay the blame for the collapse on the work of the contractor that Banks claims succeeded him. For example, Banks asserts that "new construction is being with demolition of the existing exterior block wall," and, "If on March 13, 2010 was a big faling of concrete block wall - labors without permit and safeguard was working in alteration of the original structural plan . . . Manual with electrical hammer vibrator can be made demolition affecting and crack the block wall to obtain required alteration for the new structural plan."

Plaintiff moved for summary judgment against BCS, the Leonards and Farley, arguing that it had no duty to defend or indemnify BCS because the policy excluded coverage for a claim that arose out of an independent contractor's work for an insured or the work out of which the claim arose was not specified in the policy. It pointed to Banks's statement, which it argued showed that BCS acted as the general contractor and project manager and that the work was performed by independent contractors. Farley and the Leonards opposed the motion on the ground that discovery was still ongoing in the underlying personal injury action. The motion court agreed, and denied plaintiff's motion as premature.

Plaintiff would be entitled to summary judgment if it could establish that "there is no possible factual or legal basis upon which [it] may eventually be held obligated to indemnify [BCS] under any policy provision" (*Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co.*, 27 AD3d 84, 93 [1st Dept 2005] [internal quotation marks omitted]). In other words, the record before us would have to establish, as a matter of law, that the underlying claim did not arise out of any work BCS did in the areas of interior carpentry, interior painting, dry wall installa-

tion, plastering or stucco work (interior or exterior), or interior tile and stone construction. Plaintiff would have to demonstrate conclusively that all of the work out of which the claim arose was performed by an independent contractor.

This record permits no such conclusions, only speculation as to the work BCS did or did not do, and the cause of the accident. Nowhere does Banks, the BCS principal, state that subcontractors performed 100% of the actual work on the project, and that BCS's role was limited to administration and supervision. In any event, Banks's statement is only marginally coherent, and, as it is essentially the sole evidence that could possibly support the drastic remedy of summary judgment in the case, we hesitate to give it great weight. Further, Devi Leonard's statement is insufficient, since it contains the assertion that "we do not know if BCS or one of their subcontractors put up the roof," which contradicts plaintiff's argument that BCS did no work on its own. Leonard's statement does not address the pertinent question whether, if BCS performed work on the roof, any of that work fell under the covered classifications delineated in the policy.

As to the cause of the roof's collapse, the opinions rendered by Banks and Leonard are at best speculative and do nothing to satisfy plaintiff's burden to establish that it was not caused by covered work. Further, they contradict each other, with Banks maintaining that the accident was precipitated by his successor's work and Leonard denying that BCS was ever replaced after it was terminated. Without a credible opinion as to the cause of the collapse, such as an expert's submission, this Court is not in a position to declare that the collapse could not, under any circumstances, have been caused by work covered by the insurance policy.

Unlike the dissent, we view the submissions by Banks and Leonard, insofar as they fail to state with any definitiveness the work BCS did *not* do, or the cause of the collapse, as insufficient to have shifted plaintiff's burden, as the party moving for summary judgment, to establish as a matter of law that the policy did not cover the claim (*see e.g. Khuns v Bay State Ins. Co.*, 78 AD3d 1496, 1497-1498 [4th Dept 2010]). Accordingly, contrary to the dissent's position, defendants were not required to produce evidence sufficient to raise an issue of fact (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). Concur—Mazzarelli, J.P., DeGrasse, Feinman and Kapnick, JJ.

Andrias, J., dissents in a memorandum as follows: The majority affirms the order denying plaintiff's motion for summary judgment declaring that it had no obligation to defend or

indemnify defendant BCS in the underlying personal injury action on the ground that plaintiff did not establish, as a matter of law, that the underlying claim did not arise out of work performed by BCS that fell within the classifications covered by the commercial lines insurance policy at issue. Because I find that plaintiff made a prima facie showing of its entitlement to summary judgment and that the opponents of the motion failed to offer a scintilla of evidence demonstrating that the underlying accident could have been caused by covered work performed by BCS, I dissent and would grant the motion.

The policy issued to BCS by plaintiff includes a "Classification Limitation Endorsement," which limits coverage to those classification codes listed in the policy. The policy also contains an "Independent Contractors Exclusion," which excludes coverage for claims "arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations."

In 2007, defendant owners hired BCS to serve as the general contractor for a construction project adding a second and third story to the subject premises. BCS filed all of the permits for the project and hired several subcontractors. Although there is no written contract, BCS's proposal indicates that the job encompassed, among other things, plumbing, electrical, structural steel, masonry, and roofing work, and the installation of an elevator, none of which fall within the classifications covered by the policy.

On or about June 10, 2008, the owners fired BCS for allegedly performing inferior work. BCS sought to withdraw the permits it obtained for the project, and advised the Department of Buildings of its request to "withdraw as *General Contractor of Record*" (emphasis added).

Two years later, on March 13, 2010, defendant Farley, the plaintiff in the underlying action, was injured when, as the underlying complaint alleges, "a portion of the adjacent building under construction collapsed striking [his] vehicle as did other debris that fell due to the partial collapse of the building under construction, and as [he] was attempting to exit his vehicle." Among other things, Farley alleges that the owners of the building and BCS were negligent in that they "failed to ensure the jobsite was free from falling objects; failed to provide safety nets, catchalls, sidewalk bridge and other safety devices to prevent the general public from being struck by falling objects; failed to ensure that the building was properly constructed and/or maintained, said failure leading to the partial collapse of the building."

Plaintiff established prima facie its entitlement to a declaration that it had no duty to defend or indemnify BCS with respect to the underlying claim, based on the clear and unambiguous language of the Classification Limitation Endorsement and Independent Contractors Exclusion.

Under the Classification Limitation Endorsement, the policy limits liability protection to those hazards designated in the policy declarations. The policy describes the covered classifications as: "91341—Carpentry-Interior"; "98305—Painting-Interior-Structures"; "92388—Dry wall or wallboard Install"; "98449— Plastering or stucco work"; and "99746—Tile, Stone-interior construction." The Independent Contractors Exclusion bars coverage for liability arising out of the work performed by a subcontractor.

In his complaint in the underlying personal injury suit, Farley alleges that "BCS . . . was in the business of performing general contracting in construction management and/or masonry work *and performed said work* at the aforesaid premises" (emphasis added). BCS was identified as the general contractor in the work permits issued by the Department of Buildings, and requested that it be allowed to withdraw as general contractor after it was fired, two years before Farley was injured by the partial building collapse.

Plaintiff also submitted the affidavit of an investigator who took a signed statement from Devi Leonard, an owner of the premises. In her statement, Leonard confirmed that BCS was hired as general contractor and that BCS hired Economy Iron Works as a steel subcontractor and other subcontractors whom Leonard did not know. Leonard stated that "the work was inferior and the columns placed were improper." She also stated that the roof work "was done improperly" and that BCS should have put up a sidewalk bridge. The investigator stated that after interviewing Leonard, he accurately transcribed Leonard's statement, which Leonard reviewed and signed (*see Chubb & Son v Riverside Tower Parking Corp.*, 267 AD2d 128 [1st Dept 1999]). No objection to the admissibility of Leonard's statement was raised below.

BCS's president, Eusebio Banks, also signed a statement, attached to the notice of appearance and verified answer he filed on behalf of BCS. In the statement, Banks indicated that BCS hired subcontractors for the frame steel work, scaffolds, general contracting, plumbing work, electrical work, and metal stair work. BCS also hired laborers, directly supervised the concrete block work, and served as a contract administrator for fully insured subcontractors while it was on the job. BCS's invoice to

the owners requested payment for this electrical, plumbing, masonry and construction work.

These submissions demonstrate that coverage is precluded by the policy because BCS acted as the general contractor, and its liability, if any, is premised on either non-covered work or work performed by its subcontractors (*see Ruiz v State Wide Insulation & Constr. Corp.*, 269 AD2d 518, 519 [2d Dept 2000] [where insured's work was classified as "painting" and a fire broke out due to the insured's repairing a roof, the Classification Limitation Endorsement was applicable and precluded coverage]). Indeed, at no point did Banks state that the wall collapse related to covered work or work that BCS performed itself. Rather, Banks maintained that Department of Buildings records reflected a December 3, 2009 complaint that "CONSTRUCTION WORK IS BEING DONE ON THE ROOF WHICH HAS CAUSE C[R]ACKS IN CALLER WALL/ALONG WITH VIBRATION," and that the concrete block wall fell because of an alteration of the original structural plan and the negligence of the new general contractor and owner in performing demolition work.

In opposition, defendants failed to produce any admissible evidence sufficient to raise a material issue of fact whether BCS was directly performing operations that could be fairly characterized as included under the policy. Any suggestion that the activity leading to the structural collapse bore a reasonable relationship to the classifications for which coverage was purchased, i.e., carpentry, painting, drywall, plastering, and interior tile work, is purely speculative (*see Atlantic Cas. Ins. Co. v C.A.L. Constr. Corp.*, 2008 WL 2946060, *5, 2008 US Dist LEXIS 58815, *14-15 [ED NY 2008] ["rooftop renovations, exterior brick work, the construction of a driveway, and the construction of an entrance ramp exceed the scope of what can be classified as interior carpentry and dry wall work"]; *see also Mount Vernon Fire Ins. Co. v Chios Constr. Corp.*, 1996 WL 15668, *2, 1996 US Dist LEXIS 414, *7 [SD NY 1996] [coverage precluded by a classification limitation for "Carpentry-Interior" because, although carpentry tasks were being performed on site, the work at issue was not "remotely related to interior carpentry"]).

Defendants also failed to raise a material issue of fact whether the policy's Independent Contractors Exclusion barred coverage for all liability arising out of work performed for BCS by one its subcontractors. The record demonstrates that BCS engaged various independent contractors to build the second- and third-story additions from which the debris ultimately injuring Farley emanated. Plaintiff did not produce any evidence demonstrating

that BCS was acting as anything other than a general contractor, which was fired two years before Farley's accident, or that it performed any covered work itself that was a proximate cause of the accident (*see Ruiz*, 269 AD2d at 519).

The summary judgment motion was not premature. Defendants "have advanced no nonspeculative basis to believe that additional discovery might yield evidence warranting a different disposition" (*Rosario v New York City Tr. Auth.*, 8 AD3d 147, 148 [1st Dept 2004]). While the cause of the wall collapse has not been attested to by experts, there is nothing in the record that remotely suggests that the building collapse was related to interior carpentry, painting, drywall, plastering and tile work performed by BCS. Significantly, defendants are BCS and the owners, who presumably have knowledge of the facts. While there has been no expert testimony, the action was commenced in June 2011, and the motion for summary judgment was not served until July 2012. Thus, defendants had ample time to investigate.