Order, Supreme Court, New York County (Joan M. Kenney, J.), entered December 3, 2012, which, insofar as appealed from as limited by the briefs, denied plaintiffs motion for summary judgment declaring that it had no obligation to defend or indemnify defendant BCS Construction Services Corp. (BCS) in an underlying personal injury action, affirmed, with costs.
Plaintiff issued a commercial lines insurance policy to BCS. The policy’s declarations page stated'BCS’s “Business Description” as “Carpentry-Painting-Drywall-Plastering-Tile-Contractor.” Elsewhere, the work to be covered was separated into five separate “classifications,” namely, “Carpentry- *528 Interior,” Painting-Interior-Structures,” “Dry wall or wallboard install,” “Plastering or stucco work,” and “Tile, Stone-Interior construction.” Plaintiff issued an endorsement to the policy clarifying that “[n]o coverage is provided for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of this policy.” Another endorsement provided that the “policy shall not apply to [claims] arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.”
Defendants Devi and Ramesh Leonard, owners of the premises located at 2241 White Plains Road, Bronx, New York (a one-story, two-unit commercial building), orally hired BCS to serve as the general contractor for a construction project that involved adding a second and third story to the premises and installing the electrical system and plumbing throughout. BCS hired several subcontractors to perform various tasks on the project, including installation of elevators, construction of the roof and steel frame, and installation of a staircase from the basement to the third floor, as well as the electrical and plumbing work. On or about June 10, 2008, the Leonards fired BCS for performing inferior work at the project.
Nearly two years later, defendant John Farley allegedly suffered a personal injury while sitting in a parked car adjacent to the building, when the building partially collapsed, and he was hit by falling debris. Shortly thereafter, the Leonards placed plaintiff on notice of Farley’s claim, asserting that “[w]hile insured was performing work on a building, they did not comply with plan and they did not perform the work properly. They left the job without completing it. A wall has collapsed. Five or six vehicles were damaged.” Devi Leonard also gave a statement to an investigator hired by plaintiff, which said, inter alia, that BCS’s “work was inferior and the columns placed were improper. We do not know if BCS or one of their subcontractors put up the roof, but it was done improperly.” Devi Leonard also asserted that after BCS left the project they were unable to replace it, and no further work was performed on the project. Plaintiff then disclaimed coverage under the policy, based on, inter alia, the endorsements discussed above, which, again, excluded coverage “for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of this policy,” and for “[claims] arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.”
*529 Farley commenced an action against BCS and the Leonards, among others, alleging, as is relevant here, that BCS was negligent in its construction of the building. Notwithstanding its earlier disclaimer, plaintiff agreed to defend BCS in the action, subject to its right to commence this declaratory judgment action against BCS and interested parties concerning the validity of its disclaimer. In its answer BCS either denied, or denied knowledge and information sufficient to form a belief as to, the allegations that the two endorsements applied. BCS’s principal, Eusebio Banks, attached a sworn statement to the answer, in which he gave a timeline of events related to BCS’s involvement in the project. Banks stated that after his work permit expired, the Leonards hired a new contractor to continue the project and to make structural and mechanical changes to the building. Banks’s statement is garbled and difficult to follow. However, it appears to lay the blame for the collapse on the work of the contractor that Banks claims succeeded him. For example, Banks asserts that “new construction is being with demolition of the existing exterior block wall,” and, “If on March 13, 2010 was a big faling of concrete block wall - labors without permit and safeguard was working in alteration of the original structural plan . . . Manual with electrical hammer vibrator can be made demolition affecting and crack the block wall to obtain required alteration for the new structural plan.”
Plaintiff moved for summary judgment against BCS, the Leonards and Farley, arguing that it had no duty to defend or indemnify BCS because the policy excluded coverage for a claim that arose out of an independent contractor’s work for an insured or the work out of which the claim arose was not specified in the policy. It pointed to Banks’s statement, which it argued showed that BCS acted as the general contractor and project manager and that the work was performed by independent contractors. Farley and the Leonards opposed the motion on the ground that discovery was still ongoing in the underlying personal injury action. The motion court agreed, and denied plaintiffs motion as premature.
Plaintiff would be entitled to summary judgment if it could establish that “there is no possible factual or legal basis upon which [it] may eventually be held obligated to indemnify [BCS] under any policy provision” (Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co., 27 AD3d 84, 93 [1st Dept 2005] [internal quotation marks omitted]). In other words, the record before us would have to establish, as a matter of law, that the underlying claim did not arise out of any work BCS did in the areas of interior carpentry, interior painting, dry wall installa *530 tion, plastering or stucco work (interior or exterior), or interior tile and stone construction. Plaintiff would have to demonstrate conclusively that all of the work out of which the claim arose was performed by an independent contractor.
This record permits no such conclusions, only speculation as to the work BCS did or did not do, and the cause of the accident. Nowhere does Banks, the BCS principal, state that subcontractors performed 100% of the actual work on the project, and that BCS’s role was limited to administration and supervision. In any event, Banks’s statement is only marginally coherent, and, as it is essentially the sole evidence that could possibly support the drastic remedy of summary judgment in the case, we hesitate to give it great weight. Further, Devi Leonard’s statement is insufficient, since it contains the assertion that “we do not know if BCS or one of their subcontractors put up the roof,” which contradicts plaintiff’s argument that BCS did no work on its own. Leonard’s statement does not address the pertinent question whether, if BCS performed work on the roof, any of that work fell under the covered classifications delineated in the policy.
As to the cause of the roofs collapse, the opinions rendered by Banks and Leonard are at best speculative and do nothing to satisfy plaintiffs burden to establish that it was not caused by covered work. Further, they contradict each other, with Banks maintaining that the accident was precipitated by his successor’s work and Leonard denying that BCS was ever replaced after it was terminated. Without a credible opinion as to the cause of the collapse, such as an expert’s submission, this Court is not in a position to declare that the collapse could not, under any circumstances, have been caused by work covered by the insurance policy.
Unlike the dissent, we view the submissions by Banks and Leonard, insofar as they fail to state with any definitiveness the work BCS did not do, or the cause of the collapse, as insufficient to have shifted plaintiffs burden, as the party moving for summary judgment, to establish as a matter of law that the policy did not cover the claim (see e.g. Khuns v Bay State Ins. Co., 78 AD3d 1496, 1497-1498 [4th Dept 2010]). Accordingly, contrary to the dissent’s position, defendants were not required to produce evidence sufficient to raise an issue of fact (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]).
Concur—Mazzarelli, J.E, DeGrasse, Feinman and Kapnick, JJ.