09-2882-cv
Continental Insurance Company v. Atlantic Casualty Insurance Company.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

—————————

August Term, 2009

(Argued: March 5, 2010                                 Decided: April 29, 2010)

Docket No. 09-2882-cv

—————————

CONTINENTAL INSURANCE COMPANY,

*Plaintiff-Appellant,*

— v.—

ATLANTIC CASUALTY INSURANCE COMPANY,

*Defendant-Appellee.*

—————————

B e f o r e:

LIVINGSTON AND LYNCH, *Circuit Judges.*[*]

—————————

[*] The Honorable Rosemary S. Pooler, originally a member of this panel, did not participate in the consideration of this appeal. The two remaining members of the panel, who are in agreement, have determined the matter. See 28 U.S.C. § 46(d); 2d Cir. I.O.P. E; United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

1

An insured party provided its insurer notice of a fire before the injured party provided notice. When the injured party sued the insurer under New York Insurance Law Section 3420(a) for satisfaction of a default judgment against the insured, the United States District Court for the Southern District of New York (Chin, *J.*) granted the insurer summary judgment, holding that the insured's notice was untimely, and extinguished the injured party's separate right to notify and sue the insurer. The injured party appeals. We reject the district court's analysis, but affirm its judgment on the separate ground that an exclusionary provision in the liability insurance policy barred coverage of the fire.

AFFIRMED

ERICK KIRKER, Cozen O'Connor, Philadelphia, Pennsylvania, *for Plaintiff-Appellant*.

AIDAN MCCORMACK (Cyril Smith, *on the brief*), Nixon Peabody LLP, New York, New York, *for Defendant-Appellee*.

GERARD E. LYNCH, *Circuit Judge:*

In 2004, employees of Wodraska Brothers, Inc. ("Wodraska"), a roofing contractor, inadvertently started a fire while installing a new roof on a house. A week later, Continental Insurance Co. ("Continental"), which insured the residence, paid the homeowners approximately $640,000 for the damage. Five months after the fire, Wodraska sent a claim to its liability insurer, Atlantic Casualty Insurance Co.

2

("Atlantic"), and two days later, Continental sent Atlantic a separate notice of claim. Atlantic denied both claims.

In 2006, Continental sued Wodraska to recover the amount Continental had paid the homeowners. Continental obtained a default judgment, but Wodraska did not pay. So Continental, as a judgment creditor standing in Wodraska's shoes, sued Atlantic under New York Insurance Law Section 3420(a) ("Section 3420(a)") for satisfaction of the default judgment. The United States District Court for the Southern District of New York (the Honorable Denny Chin) awarded Atlantic summary judgment, holding that Wodraska's untimely notice of its claim to Atlantic had extinguished Continental's ability to give Atlantic subsequent notice and to bring a direct action against Atlantic.

On appeal, Continental argues, inter alia, that Section 3420(a) entitled it to provide Atlantic independent notice of its claim and to sue Atlantic, despite the fact that Wodraska had already given Atlantic notice. We agree. But we affirm the district court's judgment on the separate ground that Atlantic's liability insurance policy with Wodraska (the "policy") excluded coverage of the fire.

## BACKGROUND

### I. The Fire

In March 2004, Donald and Cecile Swallow ("Swallows" or "homeowners") hired Wodraska to "apply a new EPDM membrane roof" to their house in Pelham Manor, New

3

York.[1]  On June 1, 2004, a Wodraska employee was using a torch on the Swallows' roof when a nearby co-worker opened a can of roofing adhesive.  The adhesive fumes ignited and lit the roof on fire.  The Pelham Manor Fire Department extinguished the fire, and subsequently investigated its cause.  The fire department chief reported:  "[E]mployees of the roofing contractor on the premis[e]s were using a portable, small propane torch to dry the roof in close proximity to highly flammable roofing cement which ignited and spread fire quickly to the upper roof and attic area."

**II.  The Liability Insurance Policies**

Continental insured the Swallows' house, and acknowledges that their policy covered the fire.  Atlantic insured Wodraska, but argues that Wodraska cannot recover under its policy for three reasons.  First, the policy required Wodraska to provide notice of an " 'occurrence' " and potential claim "as soon as practicable."  Second, the policy contained an exclusionary provision, the Roofing Limitation Endorsement ("RLE"), which provided: "[W]e do not cover claims, loss, costs or expense arising out of . . . property damage as a result of any operations involving any hot tar, wand, torch or heat applications or membrane roofing."  Finally, Wodraska failed to comply with its

---

[1]  EPDM is a roofing "compound that is manufactured from ethylene, propylene, and a small amount of diene monomer."  EPDM Roofing Association, Frequently Asked Questions – What is EPDM?, available at http://www.epdmroofs.org/faqs/faq_general.shtml#1.

4

obligation under the policy to "[c]ooperate with [Atlantic] in the investigation" of Continental's claim against Wodraska.

**III. Notice to Atlantic and Atlantic's Disclaimers**

A week after the fire, Continental paid the Swallows approximately $640,000 for the damage. At that time, Continental did not know the identity of Wodraska's insurer, its efforts to find that information having failed. On November 16, 2004, five months after the fire, Wodraska sent Atlantic its notice of claim. The next day, Continental first learned that Atlantic insured Wodraska when Atlantic's representative called Continental's counsel. Continental sent Atlantic its notice of claim the following day.

Atlantic denied both claims. By a letter dated November 23, 2004, Atlantic denied Wodraska's claim, because Wodraska had failed to report the fire "as soon as practicable," and because the RLE barred "coverage for costs associated with damage to the building or contents arising out of operations involving any hot tar, wand, torch or heat application or membrane roofing." By a separate letter of the same date, Atlantic notified Continental that it had declined Wodraska's claim "due to an exclusionary endorsement in the policy."

**IV. Prior Proceedings**

A. Continental's Suit Against Wodraska

On January 27, 2006, Continental, as subrogee of the Swallows, sued Wodraska to recover the $640,000 it had paid, alleging that Wodraska had negligently started the fire.

Wodraska received the complaint, but failed to answer. In May, Continental notified Atlantic that a default judgment would enter if Wodraska did not respond to the complaint by June 30. The following week, Atlantic's representative sent another letter to Wodraska (and a copy to Continental) denying coverage and any duty to defend Wodraska. Wodraska never entered an appearance, and on July 17 the district court entered a default judgment for $763,695.85 – the amount Continental had paid the Swallows, plus interest and costs.

On July 24, 2006, Continental sent Atlantic notice of the default judgment. Atlantic maintained that it owed Wodraska no duty to indemnify or defend, but it provided Wodraska a "courtesy interim defense" counsel who unsuccessfully moved to reopen the default. Wodraska never satisfied the default judgment.

B. Continental's Suit Against Atlantic

On May 8, 2007, Continental, as a judgment creditor, sued Atlantic for a declaratory judgment that Atlantic was obligated to indemnify Wodraska and, therefore, to satisfy Continental's default judgment. Continental sued under Section 3420(a)(2), which allows an injured party, in its capacity as a judgment creditor, to sue the insurer of the defaulted party in some circumstances.

After discovery, Continental and Atlantic cross-moved for summary judgment.

6

In a June 4, 2009 memorandum decision, the district court awarded summary judgment to Atlantic because

> Continental's action is barred by Wodraska's failure to timely notify Atlantic of the claim. Continental, the injured party, relied on Wodraska, the insured, to provide notice to Atlantic, the insurer. Because Wodraska was the only party to notify Atlantic of the claim . . . Continental's rights are derivative of Wodraska's. Wodraska's notice was untimely under the Policy as a matter of law, and Continental therefore cannot recover in this action.

Continental Ins. Co. v. Atlantic Cas. Ins. Co., No. 07 Civ. 3635 (DC), 2009 WL 1564144, *6 (S.D.N.Y. June 4, 2009).

The district court acknowledged that Section 3420(a) "authorizes an injured party who has obtained a judgment against the party responsible for the injury . . . to institute a direct action against the insurer of the party against whom the judgment was obtained." Id. at *4 (internal quotation marks omitted). The court also agreed that "in some circumstances the injured party may have greater rights than the insured. For example, even where the insured fails to give notice to the insurer of a claim as required by a policy, courts may still permit the injured party to recover." Id. at *5. However,

> [w]here the insured is the first to give notice of a claim to the insurer, . . . then the injured party's rights are considered to be 'derivative' of the insured's vis-a-vis the insurer. In [such a] scenario, where the insured's notice is untimely and the insurer disclaims coverage based on untimely notice, an injured party will be unable to recover under Section 3420 against the insurer because of the insured's untimely notice. Thus it is critical, in assessing a claim brought under Section

7

3420, to determine which party – the injured party or the insured – first notified the insurer of the claim.

Id. (citations and footnote omitted).  The court noted, "It is an anomaly of the Section 3420 caselaw, then, that an injured party is better off if the insured gives no notice than late notice."  Id. at *5 n.3.

On June 15, 2009, Continental moved for reconsideration, arguing that the summary judgment decision overlooked the fact that Continental had provided independent notice of its claim to Atlantic on November 18, 2004.  In an August 13 memorandum decision, the court conceded that error, but did not change its previous decision.  It said that its previous decision

was based entirely on the fact that Wodraska, the insured, was the *first* to provide notice of the claim to Atlantic. . . . [B]ecause Wodraska was the first to provide notice, any notice Continental provided *after* Wodraska provided notice was superfluous. . . .  It is, therefore, wholly irrelevant that Continental provided notice to Atlantic after Wodraska.

Continental Ins. Co. v. Atlantic Cas. Ins. Co., No. 07 Civ. 3635 (DC), 2009 WL 2476538, *1-2 (S.D.N.Y. Aug. 13, 2009) (citations omitted).

**DISCUSSION**

Continental argues on appeal that Section 3420(a) permitted it to give Atlantic independent notice of its claim, despite the fact that Wodraska had already given Atlantic untimely notice of its own claim.  We agree.  But we affirm the district court's judgment on the separate ground that the RLE barred coverage of the fire.

8

## I. New York Insurance Law Section 3420(a)

Section 3420(a) requires all New York insurance contracts to "contain[] in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors":

> (2) A provision that in case judgment against the insured . . . in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may. . . be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.
>
> (3) A provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.
>
> (4) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

N.Y. Ins. Law § 3420(a).

In short, Subsection (a)(2) allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some

9

circumstances. See, e.g., McCormick & Co., Inc. v. Empire Ins. Group, 878 F.2d 27, 28-29 (2d Cir. 1989) (discussing Section 3420(a)(2)); Becker v. Colonial Co-op. Ins. Co., 24 A.D.3d 702, 704 (N.Y. App. Div. 2d Dep't 2005) (same). Subsection (a)(3) permits the injured party to give notice to the insurer to protect that right of direct action, see, e.g., AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 626 (2d Cir. 1996) (discussing Section 3420(a)(3)); Becker, 24 A.D.3d at 704 (same), and Subsection (a)(4) sets the standard for reasonableness of that notice. See, e.g., State of N.Y. v. Blank, 27 F.3d 783, 795 (2d Cir. 1994) (citing Section 3420(a)(4)).

Before the New York legislature enacted the precursors to Section 3420,[2] under the common law an injured party "possessed no cause of action against the insurer of the tort-feasor." Jackson v. Citizens Cas. Co., 14 N.E.2d 446, 447 (N.Y. 1938). If an injured party obtained a judgment against an insured party and the insured party failed to satisfy the judgment, "the plaintiff could not sue the insurance company directly because there was no privity of contract between plaintiff and the insurance carrier." Lang v. Hanover Ins. Co., 820 N.E.2d 855, 857 (N.Y. 2004) (discussing Section 3420(a)(1)). So the injured party bore the loss. Id.

The legislature recognized that an injured party "had a genuine interest in [the liability insurance policy] and should be enabled to invoke its protection." Lauritano v.

---

[2] For a discussion of Section 3420's precursors, see Richards v. Select Ins. Co., Inc., 40 F. Supp. 2d 163, 168 (S.D.N.Y. 1999).

10

Am. Fid. Fire Ins. Co.,  3 A.D.2d 564, 567 (N.Y. App. Div. 1st Dep't 1957).  So the legislature "remedied th[e common law's] inequity by creating a limited statutory cause of action on behalf of injured parties directly against insurers," which is presently codified at Section 3420.  Lang, 820 N.E.2d at 857; see also Lauritano, 3 A.D.2d at 567-68 (Section 3420 and its precursors "profoundly altered what was once commonly accepted – that the liability policy existed solely for the protection of the insured.").

When an insured tortfeasor gives the insurer late notice first and the injured party provides subsequent notice under Section 3420(a), New York courts do not dismiss the injured party's notice simply because it came second.  Courts have instead held that

> [w]here the insured fails to give proper notice, the injured party can give notice herself, thereby preserving her right to proceed directly against the insurer.  Having been statutorily granted an independent right to give notice and recover directly from the insurer, the injured party or other claimant is not to be charged vicariously with the insured's delay.

Appel v. Allstate Ins. Co., 20 A.D.3d 367, 368 (N.Y. App. Div. 1st Dep't 2005) (internal quotation marks omitted) (insured notified insurer of dog bite after default judgment entered, then injured party sent subsequent notice).[3]  When the insured gives late notice

---

[3] See also Malik v. Charter Oak Fire Insurance Co., 60 A.D.3d 1013, 1016 (N.Y. App. Div. 2d Dep't 2009) (where it was unclear whether insured or injured party notified insurer of accidental shooting first, order of notice did not affect court's analysis); Becker, 24 A.D.3d at 704 (where insured notified insurer two years after slip-and-fall, and injured party notified two days later, insured's failure to provide notice "does not serve to cut off the right of an injured claimant to make a claim as against the insurer"); Wraight v. Exch. Ins. Co., 234 A.D.2d 916, 917 (N.Y. App. Div. 4th Dep't 1996) (where insured notified its insurer twenty months after an automobile accident, and injured party

11

first and the injured party gives subsequent notice, courts determine whether the injured party's notice has effectively protected the injured party's right to sue not by looking at the order in which the insurer received that notice, but by examining whether the injured party "pursued his rights" to notify the insurer pursuant to Section 3420(a) "with as much diligence as was reasonably possible" under the circumstances. Malik, 60 A.D.3d at 1016 (internal quotation marks omitted). This separate standard, used to determine the reasonableness of the injured party's notice, is more lenient than the standard for the insured party's notice.[4]

gave notice the following month, "[a]n injured party has an independent right to provide written notice to an insurer" (internal quotation marks omitted)); Walters v. Atkins, 179 A.D.2d 1067, 1068 (N.Y. App. Div. 4th Dep't 1992) (where insured notified its insurer eleven months after an all-terrain vehicle crash, and injured party notified insurer over a month later, "injured party has an independent right to provide written notice to an insurer and cannot be bound by an insured's late notice").

[4] See also Becker, 24 A.D.3d at 704 ("When the injured party has pursued his rights with as much diligence as was reasonably possible the statute shifts the risk of the insured's delay to the compensated risk-taker. Thus, the pertinent inquiry is whether the plaintiff pursued his rights with as much diligence as was reasonably possible." (internal quotation marks and citations omitted)); Appel, 20 A.D.3d at 368-69 (examining "reasonableness" of injured party's notice that was received after insured party's notice); Rochester v. Quincy Mut. Fire Ins. Co., 10 A.D.3d 417, 418 (N.Y. App. Div. 2d Dep't 2004) (where insured notified insurer three months after injured party fell through window, and injured party subsequently notified insurer, the "only issue with respect to the injured party is whether the efforts of the injured party to facilitate the providing of proper notice were sufficient in light of the opportunities to do so afforded it under the circumstances." (internal quotation marks and alteration omitted)); Wraight, 234 A.D.2d at 917 ("Provided that an injured party has pursued his rights with as much diligence as was reasonably possible the statute shifts the risk of the insured's delay to the compensated risk-taker." (internal quotation marks omitted)). Cf. Lauritano, 3 A.D.2d at 568 (where the insured party never notified the insurer, court "judged [injured party's

12

Allowing an injured party to provide notice after an insured party provides untimely notice makes sense. First, it serves Section 3420(a)'s aforementioned purpose of allowing an injured party to sue an insurance company for satisfaction of an unpaid default judgment against an insured party. Since, by statute, the injured party has an independent right to recovery against the tortfeasor's liability insurer, it makes little sense to cut off that right, when the injured party has attempted with due diligence to identify and notify the insurer, because of a dereliction not by the injured party, but by the insured tortfeasor.

Second, allowing an injured party to provide notice after an insured party provides untimely notice avoids the anomaly to which the district court alludes. Atlantic does not dispute, as it cannot under the New York caselaw,[5] that if it had never received *any* notice from Wodraska, Continental's notice to it would be effective, if that notice was reasonably timely in light of the circumstances facing Continental. It would be irrational

---

notice] by the prospects for giving notice that were afforded him, not by those available to the insured.").

[5] See, e.g., Gen. Accident Ins. Group v. Cirucci, 387 N.E.2d 223, 224-25 (N.Y. 1979) (where insured provides no notice to insurer, "an injured third party may seek recovery from an insured's carrier despite the failure of the insured to provide timely notice of the accident"); Lauritano, 3 A.D.2d at 568 ("[W]hen the insured has failed to give proper notice, the injured party, by giving notice himself, can preserve his rights to proceed directly against the insurer. . . . The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured's delay.") (interpreting Ins. Law § 167, predecessor to N.Y. Ins. Law § 3420(a)).

13

if the injured party could provide effective notice to the insurer when the insured party entirely fails to do so, but the injured party could not notify the insurer and protect its right to sue after the insured provides notice (albeit untimely, in light of the circumstances of the insured and the terms of the policy) to the insurer. If the insurer may not escape liability when it receives no notice from the insured but it is notified by the injured party, there is no reason why the insurer should escape liability when it receives notice from the insured party before receiving notice from the injured party and is, therefore, better informed than it would be if it had received no notice from the insured.

Finally, it makes sense to judge each party's notice by different standards. Each party stands in a different position relative to the insurer. The insured knows who its insurer is, and has entered into a contractual relationship that typically prescribes how quickly the insured must notify the insurer of any claims, often requiring something akin to the "as-soon-as-practicable" requirement here. If the insured does not notify the insurer within the prescribed time, then it has failed to meet a condition of its contract and it, therefore, cannot make a successful claim on its policy. By contrast, the injured party is a stranger. It may not know who the insurer is and it may, despite its best efforts, struggle to discover the insurer's identity, as Continental claims happened here. That a five-month delay in providing notice on the part of an insured who has contracted for indemnity on the condition that it provide notice of a covered occurrence to its own insurer as soon as practicable constitutes an unreasonable delay does not mean that it is

14

similarly unreasonable for the injured party to provide notice at about the same time; despite due diligence, the injured party may, as asserted in this case, have only identified the insurer after the five-month period, and immediately provided notice on learning the insurer's identity. The fact that the insured party's prior notice is untimely to protect *its* contractual right to sue the insurer does not necessarily imply that the injured party's notice is untimely to protect *its* independent statutory right to sue the insurer.

Atlantic attempts to distinguish the cases that allow injured parties to provide notice after the insured party provides untimely notice, arguing that those cases involve bodily injury claims rather than property damage claims. Atlantic says that Section 3420(d) and cases construing that provision treat bodily injury claimants "different[ly]" than property injury claimants because bodily injury claimants "require special protections," and argues Continental improperly seeks to avail itself of those special protections in a mere claim for property damage. But this argument misses the mark. Section 3420(d) does indeed provide special rules governing personal injury claims.[6] But

---

[6] N.Y. Ins. Law § 3420(d) provides:

(1)(A) This paragraph applies with respect to a liability policy that provides coverage with respect to a claim arising out of the death or bodily injury of any person . . . .

(B) Upon an insurer's receipt of a written request by an injured person who has filed a claim or by another claimant, an insurer shall, within sixty days of receipt of the written request: (i) confirm to the injured person or other claimant in writing whether the insured had a liability insurance policy of

15

Continental does not invoke Section 3420(d), and the cases on which Continental relies do not, either. They invoke Section 3420(a), which is not limited to bodily injury or wrongful death claimants. Neither Section 3420(a) nor any of the cited cases suggest that the rules established by those cases would not apply in a property damage case.

Atlantic also argues that "the legislative intent behind Insurance Law § 3420 does not apply and its benefits are simply not available to claims by insurers, such as Continental." Atlantic relies on Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co., 27 A.D.3d 84 (N.Y. App. Div. 1st Dep't 2005), which addressed whether Section 3420(d)'s requirement that an insurer promptly issue any disclaimer to a bodily injury or death claimant also applies to co-insurers. 27 A.D.3d at 85. In dicta, Bovis called Section 3420(a) an example of a provision of Section 3420 that does not protect co-insurers, but instead "emphasi[zes] . . . protecting the insured and those who have claims against the insured." Id. at 91. Bovis does not help Atlantic. First, its comment

the type specified in subparagraph (A) of this paragraph in effect with the insurer on the date of the alleged occurrence; and (ii) specify the liability insurance limits of the coverage provided under the policy. . . .

(2) If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

16

regarding Section 3420(a) is dicta, and its discussion of 3420(d) is inapposite. Second, its suggestion that Section 3420(a) does not protect co-insurers is immaterial, because Continental is not a co-insurer. Continental stands in the shoes of the Swallows, an injured party with an unsatisfied judgment against the insured – precisely the sort of litigant Bovis says Section 3420(a) protects.

The district court erred when it held that Wodraska's notice extinguished Continental's ability to provide subsequent notice in order to protect its right to sue Atlantic.[7] To reach this conclusion, the district court relied on inapposite precedent that addresses an insurer's obligations when issuing its notice of disclaimer – specifically, when the insurer receives the insured's notice of claim before receiving the injured party's notice, and the insurer denies the insured's claim for lack of timely notice, must the insurer's notice of disclaimer to the insured party mention the injured party's notice? Courts have held that in such scenarios an insurer's disclaimer to the insured only needs to address the insured's notice and not the injured party's subsequent notice. Because the

---

[7] We note that at least one other district court in this jurisdiction seems to have held similarly. U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., Inc., 337 F. Supp. 2d 435, 448 (S.D.N.Y. 2004) ("Once an insurer has received notice from the insured, whatever notice requirements may be applicable are prima facie satisfied (subject to any challenge by the insurer). Thus, the ability of an injured party to provide notice to the insurer in lieu of the insured under § 3420(a)(3) is moot once notice has been accomplished by the insured."). But cf. id. at 449 (implying that the injured party could give subsequent notice by examining whether the injured party's subsequent notice met Section 3420(a)(4)'s standard for injured party notice).

17

insurer's disclaimer to the insured need not address the injured party's subsequent notice, courts have called an injured party's subsequent notice "superfluous" in this context.[8] As Continental notes, this rule makes sense because the insurer might receive the insured's notice and send a disclaimer to the insured before the insurer receives any notice from an injured party or has any reason to know that an injured party will be providing independent notice.

The precedent that the insurer may treat an injured party's subsequent notice as superfluous, however, only speaks to "the scope of the insurer's obligation to the injured party after the injured party has triggered that obligation by providing notice." Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 217 n.6 (2d Cir. 2004). That precedent does not speak to the question of whether or not an injured party's subsequent notice protects its right to sue an insurer. Nor should we draw on that precedent to answer this question.

---

[8] See Mass. Bay Ins. Co. v. Flood, 128 A.D.2d 683, 684 (N.Y. App. Div. 2d Dep't 1987) (after the insured party notified the carrier, "any subsequent information provided by the injured party was, for notice purposes, superfluous, because there was already prima facie compliance with the contractual notice requirements of the policy," and the injured party's notice "need not be addressed in the [insurer's] notice of disclaimer where, as here, the initial notice of the occurrence was provided to the carrier by the insureds."); see also Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 217 n.6 (2d Cir. 2004) ("Where . . . the insured party gives notice and the injured party only later provides notice, the injured party's notice is 'superfluous' and the insurer need not disclaim as to the injured party."), quoting Flood, 128 A.D.2d at 684; Steinberg v. Hermitage Ins. Co., 26 A.D.3d 426, 428 (N.Y. App. Div. 2d Dep't 2006) ("'Where the insured is the first to notify the carrier, even if that notice is untimely, any subsequent information provided by the injured party is superfluous for notice purposes and need not be addressed in the notice of disclaimer issued by the insurer.'"), quoting Ringel v. Blue Ridge Ins. Co., 293 A.D.2d 460, 462 (N.Y. App. Div. 2d Dep't 2002); Rochester, 10 A.D.3d at 418 (same).

18

As discussed above, if the injured party may provide notice to protect its right to sue the insurer when the insured party never gives notice, then it would make no sense to say that the injured party's notice becomes "superfluous" for the purpose of protecting its right to sue simply because the insured party gave the insurer prior notice. The district court erred, therefore, when it relied on that precedent from a different context to hold that "any notice Continental provided *after* Wodraska provided notice was superfluous" for the purpose of protecting Continental's right to sue Atlantic. Continental, 2009 WL 2476538, at *1.

Here, the insured, Wodraska, gave its insurer, Atlantic, notice five months after the fire. The injured party, Continental, gave Atlantic notice a few days later, as soon as it discovered the insurer's identity, in order to protect its own right to bring a direct action against Atlantic under Section 3420(a). Continental was entitled to give Atlantic its independent notice. That notice was not ineffective simply because it came after Wodraska's. To determine whether Continental's notice effectively preserved Continental's right to sue Atlantic, we would have to examine whether that notice was reasonable under the standard for injured party notice, in light of Continental's claim that it was unable, despite due diligence, to identify earlier Atlantic as the relevant insurer. But we need not reach that question, since Atlantic is entitled to summary judgment on a separate ground.

**II. Roofing Limitation Endorsement**

19

If we were to find Continental's notice adequate and allow Continental to proceed with its suit, Continental would do so in its capacity as a judgment creditor. Under Section 3420, "the creditor's rights are no greater or less than those of the insured debtor, and recovery cannot exceed the policy limits." McCormick, 878 F.2d at 29. "[T]he injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company." Lang, 820 N.E.2d at 858. Therefore, we must determine whether Wodraska could recover against Atlantic under its policy. It could not, because the casualty that occurred was specifically excluded from coverage under that policy.

The parties disagree about whether the RLE barred coverage of the fire. The RLE provides: "[W]e do not cover claims, loss, costs or expense arising out of . . . property damage as a result of any operations involving any hot tar, wand, torch or heat applications or membrane roofing." Atlantic argues that "while it would suffice [to exclude coverage] to have *any* operations involving a torch *or* membrane roof, here the operations involved both, so the RLE plainly applies to bar coverage" of the fire. Continental argues that the RLE does not bar coverage for two reasons. First, the act of opening the adhesive – the act that Continental claims caused the fire – did not constitute a roofing "operation" that the RLE excluded. Second, the RLE bars only claims arising from "hot" applications of membrane roofs, and Wodraska was using a "cold" application procedure.

20

New York law treats an insurance policy as a contract and construes it in accordance with general contract principles. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos., Inc., 265 F.3d 97, 103 (2d Cir. 2001). "[T]he initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks omitted). Whether the contract is unambiguous is "a question of law for the court." Id. Ambiguity exists if the contract terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (internal quotation marks omitted). When interpreting a contract, the "intention of the parties should control . . . [, and] the best evidence of intent is the contract itself; if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." Hatalmud v. Spellings, 505 F.3d 139, 146 (2d Cir. 2007) (internal quotation marks and citations omitted).

The RLE is not ambiguous on the question of whether it excludes coverage of the fire. The RLE's use of the disjunctive – "any operations involving any hot tar, wand, torch or heat applications *or* membrane roofing" – indicates that it excludes coverage of losses arising out of "any operations involving . . . any torch" *or* "any operations

21

involving . . . membrane roofing." The "operations" at issue here involved both a torch and membrane roofing. Wodraska was hired to "apply a new EPDM membrane roof," and when its employees were applying that roof, they started the fire, in part, by using a torch. The fire resulting from the "operations" therefore falls squarely within the RLE's exclusionary terms.

Continental fails to show either that the RLE does not apply or that it is ambiguous. Continental claims the RLE bars coverage only of "'operations' wherein the insured is actually in the process of applying the membrane roofing." Because opening the can of adhesive was not "a specific membrane-roofing application act, but rather a discrete task related to the supply of materials," Continental argues the RLE does not apply. We reject such a narrow reading of the RLE. The RLE uses broad language to bar coverage for any losses resulting from "any operations involving . . . membrane roofing." We have consistently interpreted the term "involve" broadly.[9] As such, opening the can of adhesive to use it in applying membrane roofing clearly counts as an "operation[] involving" membrane roofing.

---

[9] See, e.g., United States v. Varrone, 554 F.3d 327, 330-31 (2d Cir. 2009) (noting that 18 U.S.C. § 982's use of the "term 'involved in' has consistently been interpreted broadly by courts . . . ."); Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 27 n.11 (2d Cir. 2002) (noting that the Federal Arbitration Act's reference to a transaction "involving commerce" is a "broad phrase," and has been construed as such by the Supreme Court); In re United States, 608 F.2d 76, 83 (2d Cir. 1979) (Kearse, J., dissenting) (noting that "the word 'involves' is broad" in interpreting the definition of an offense that "involves use of the mails" under 18 U.S.C. 3237(b)).

22

Continental also argues that the RLE bars claims arising only from "hot" applications of membrane roofs. Because there is no comma between "applications" and "or membrane roofing," Continental says both "applications" and "membrane roofing" are modified by the preceding list of words – "hot tar," "wand," "torch," and "heat." This interpretation fails. Although a comma between "applications" and "or membrane roofing" might underscore the disjunctive effect of "or," it is not necessary. Continental essentially argues that the lack of comma compels us to read the RLE to bar coverage for losses resulting from "any operations involving any hot tar, wand, torch or heat applications *of* membrane roofing" despite the fact that the RLE bars coverage for losses resulting from "any operations involving any hot tar, wand, torch or heat applications *or* membrane roofing." Moreover, the syntax of Continental's interpretation is awkward at best, requiring us to read "hot tar, wand, torch or heat," which are nouns, as adjectives modifying "applications or membrane roofing." In short, Continental's reading would impermissibly ignore the plain meaning of the RLE's terms.

Accordingly, because the RLE effectively precludes coverage for "any operations involving . . . any torch" as well as for "any operations involving . . . membrane roofing," and the "operations" that started the fire involved both a torch and membrane roofing, losses arising out of the fire were not within Wodraska's liability coverage.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

23