Twitchell Tech. Prods., LLC v Mechoshade Sys., LLC (2025 NY Slip Op 25207)

[*1]

Twitchell Tech. Prods., LLC v Mechoshade Sys., LLC

2025 NY Slip Op 25207

Decided on September 3, 2025

Supreme Court, Queens County

Livote, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 3, 2025
Supreme Court, Queens County

Twitchell Technical Products, LLC, Plaintiff,

against
Mechoshade Systems, LLC, Defendant.

Index No. 713089/2020

Plaintiffs' Attorney
Katten Muchin Rosenman LLP
By: Mark T. Ciani, Zachary Scott Beal
50 Rockefeller Plaza, 
New York, NY 10020-1605
(212) 940-6348
Emails: [email protected], [email protected]
Defendants' Attorney
Fried Frank Harris Shriver and Jacobson LLP
By: Joshua Daniel Roth, Shira Danielle Sandler, Harrison David Polans, Sean William Roberts
1 New York Plaza
New York, NY 10004
(212) 859-8035
Emails: joshua.rothfriedfrank.com, [email protected], [email protected], [email protected]

Leonard Livote, J.

The following e-filed documents, listed by NYSCEF document number (Motion 019) 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 424, 425, 426, 427, 428, 429, 430, 431, 432, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 774, 828 were read on this motion to/for JUDGMENT - [*2]SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 020) 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 434, 435, 436, 437, 438, 439, 440, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 567, 568, 569, 570, 571, 572, 763, 764, 765 were read on this motion to/for JUDGMENT - SUMMARY.
The above-numbered documents were read on Motion Sequence 19 by the defendant, Mechoshade Systems, LLC's ("Mechoshade"), for an Order pursuant to CPLR § 3212: (i) granting partial summary judgment dismissing those portions of the claims in the amended complaint (NYSCEF Doc. No. 79) of plaintiff, Twitchell Technical Products, LLC ("Twitchell"), that seek damages for any period of time after May 31, 2019, or related relief, on the grounds that Mechoshade terminated its contractual relationship with Twitchell as of that date; and (ii) granting such other and further relief as this Court may deem just and proper.
The above-numbered documents were read on Motion Sequence 20 by Twitchell, for an Order pursuant to CPLR § 3212: (i) granting summary judgment in favor of Twitchell on its declaratory judgment claim, (ii) granting summary judgment in favor of Twitchell as to liability on its breach of contract claim, and ordering an immediate trial on damages as permitted by CPLR § 3212(c), (iii) granting summary judgment in favor of Twitchell on all of Mechoshade's counterclaims and dismissing each counterclaim with prejudice; (iv) and granting such other and further relief as this Court may deem just and proper.
Upon the foregoing documents, Motions Sequence 19 and 20 are determined as follows:
This case concerns a decades-long business relationship between Twitchell, a fabric manufacturer, and Mechoshade, an interior window shading company. For over a century Twitchell has produced woven fabrics for a variety of markets, including interior window shading. For the last fifty years, Mechoshade has designed, manufactured, and marketed interior solar roller shades, a type of interior window shading.
More than thirty years ago, the parties entered into a pair of exclusive distribution agreements under which Twitchell manufactured shade fabrics solely for Mechoshade, and Mechoshade obtained the right to distribute those fabrics. The agreements also contained restrictive covenants providing that, upon termination, Twitchell would not sell those exclusive fabrics — or substantially similar ones — to Mechoshade's competitors.
The present dispute arose from Mechoshade's notice of non-renewal in 2018, its termination of the agreement in 2019, and its attempt in 2020 to enforce the restrictive covenant. Twitchell seeks a declaratory judgment that the restrictive covenant is unenforceable. Mechoshade counterclaims for a declaratory judgment and a permanent injunction enforcing it.
BACKGROUND AND PROCEDURAL HISTORY
In the late 1970s, Mechoshade approached Twitchell about manufacturing fabric suitable [*3]for use in solar roller shades, a then-innovative idea in the interior shading market. Solar roller shades are a type of window covering made form specially engineered fabric that filters sunlight, reduces glare, and blocks UV rays while still allowing visibility through the window. Twitchell possessed the looms, technical capacity and experience in woven textiles necessary to carry out Mechoshade's vision.
Mechoshade invested heavily in the collaboration. It contributed more than $100,000, commissioned a university study on fabric-glass interactions, and provided technical input that produced innovations still present in its products today. Beyond development, Mechoshade devoted substantial resources to marketing and promotion, helping to expand the then-emerging solar roller shade market itself — a market from which Twitchell benefitted.
By the 1980s, the collaboration yielded a new line of shade fabrics that become integral to Mechoshade's flagship products. At first, the partnership operated informally on a handshake basis. On June 1, 1989, the parties formalized their arrangement in two nearly identical exclusive distribution agreements: one covering North America (the "Mechoshade Agreement"; NYSCEF Doc. No. 7) and the other covering the rest of the world (the "Berman Agreement"; NYSCEF Doc. No. 25) (together, the "Agreements").
Under the Agreements, Twitchell agreed to manufacture fabrics for Mechoshade on an exclusive basis for use in solar roller shade products, and Mechoshade became Twitchell's sole distributor within the defined "Window Shading Product Line" (§ 1.1). That line encompassed interior and greenhouse shading for glazed windows and skylights, while expressly excluding exterior awnings, automotive products, and fixed exterior screening (collectively, the "Non-Competing Industries").
Specifically, Section 2.1 permits Twitchell to sell non-exclusive fabrics to the Non-Competing Industries, provided it takes reasonable steps to ensure those fabrics are not used for window shading.
Section 8.1 requires Mechoshade to promote and distribute the exclusive fabrics only within the Window Shading Product Line. Section 8.2 carves out narrow exceptions, allowing Mechoshade to make third-party purchases when required by contract documents, necessary to secure a project, or necessary to preserve a relationship with a dealer on a specific project.
Section 11 establishes an initial two-year term with automatic two-year renewals unless either party gives one year's written notice of non-renewal. Section 11.1 contains the restrictive covenant, barring Twitchell, upon termination, from selling the exclusive fabrics in the window shading market, including "slightly modified fabrics which are substantially similar" (§ 11.1). Finally, Section 13 provides that if either party breaches the Agreements, the non-breaching party may terminate by giving one year's written notice, effective if the breach is not cured within that period.
In May 2018, Mechoshade notified Twitchell that it would not renew the Agreements. The notice was sent by email from Cuyler Cunningham, Vice President of Global Procurement at Springs, Mechoshade's parent company, to Twitchell's CEO, Jeff Register (NYSCEF Doc. No. 93). The notice referred expressly to the agreement entered into with Joel Berman — i.e., the Berman Agreement — and stated:
Pursuant to Section 11 of that certain Exclusive Distributorship Agreement (the "Agreement") by and between Twitchell Technical Products, LLC as successor in interest to Twitchell, a division of Ludlow Corporation ("Twitchell") and Joel Berman Associates, Inc. (n/k/a Mechoshade Systems, LLC) ("Mechoshade"), Springs Window [*4]Fashions, LLC, on behalf its subsidiary Mechoshade, hereby provides notice that Mechoshade will not renew the Agreement for any additional two (2) year periods after the expiration of the current renewal period on May 31, 2019. Therefore, the Agreement shall terminate effective that date. Although the Agreement will terminate next year, Mechoshade is interested in continuing its relationship with Twitchell under new terms. We look forward to discussing these proposals with you in the weeks and months ahead
(NYSCEF Doc. No. 9).
Mr. Register promptly acknowledged receipt and turned his attention to renegotiation. Within weeks of the notice, Mr. Register wrote to Mechoshade expressing Twitchell's "strong desire" to continue the partnership and pressing to finalize new terms (NYSCEF Doc. Nos. 427, 428; 328 ¶ 15). In preparation for a July 2018 meeting, he prepared a presentation titled "Twitchell Needs" (NYSCEF Doc. No. 352), which stated that the "current Agreements" would end in June 2019 and that, absent a new contract, all existing terms would be "null and void."
For the next several years, the parties conducted business on a purchase-order basis and renegotiated terms as needed. In July 2020, Mechoshade sent Twitchell a letter reminding them that Section 11's restrictive covenant had been invoked and asserting that Twitchell remained prohibited from selling to others the same or substantially similar fabrics is had previously supplied (NYSCEF Doc. No. 10).
Twitchell thereafter commenced this action by summons and complaint seeking, among other relief, a declaratory judgment (1) that the restrictive covenant is unenforceable as a matter of law; (2) that they are unenforceable under the doctrine of unclean hands based on Mechoshade's alleged purchases from other suppliers in violation of Section 8.1 and not excused by Section 8.2; and (3) that the Mechoshade Agreement was never terminated. In the alternative, Twitchell seeks damages for breach of contract, alleging that if the Mechoshade Agreement remained in effect, Mechoshade breached Section 8.1 by continuing to purchase fabric from other suppliers after May 31, 2019 (NYSCEF Doc. No. 79).
Mechoshade interposed an answer with counterclaims, asserting that (1) the Agreements had been terminated; (2) the restrictive covenant therefore remains enforceable; and (3) its purchases from third parties were excused under Section 8.2. Mechoshade further contends that Twitchell was prohibited from selling the exclusive fabrics, or substantially similar fabrics, to Mechoshade's competitors, and seeks damages for breach of contract based on Twitchell's alleged post-termination violation of the restrictive covenant or, in the alternative, a permanent injunction prohibiting Twitchell from selling the exclusive fabrics to competitors (NYSCEF Doc. No. 62).
Twitchell then moved to dismiss the counterclaims pursuant to CPLR 3211(a)(1) and (7), arguing that the restrictive covenant is unenforceable as a matter of law and that Mechoshade had failed to plead facts supporting enforceability (Motion Sequence 003). By Order, dated June 29, 2021, this Court denied the motion (NYSCEF Doc No. 52), and Twitchell appealed. 
The Appellate Division affirmed (Twitchell Tech. Products, LLC v Mechoshade Sys., LLC, 227 AD3d 45 [2d Dept 2024]), holding that restrictive covenants in ordinary commercial contracts are analyzed under a simple "rule of reason." The court found it premature to determine on the pleadings whether the restrictive covenant protects a legitimate business interest or imposes undue hardship. It further held the unlimited geographic scope and indefinite duration, together, rendered the restrictive covenant facially overbroad, but that whether it may be partially enforced is a fact-intensive question requiring a more developed record (id).
The parties now move for summary judgment. Mechoshade, in Motion Sequence 19, seeks partial summary judgment dismissing Twitchell's claims after May 31, 2019, on the ground that the Agreements terminated as of that date. Twitchell, in Motion Sequence 20, seeks summary judgment dismissing the counterclaims, declaring the restrictive covenant unenforceable as a matter of law, and granting judgment as to liability on its breach of contract claim with a trial on damages.

ANALYSIS
On a motion for summary judgment pursuant to CPLR 3212, it is well established that "the proponent . . . must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Once the movant makes the proper showing, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). However, bald, conclusory assertions or speculation and "[a] shadowy semblance of an issue" are insufficient to defeat summary judgment (S.J. Capelin Assoc. v. Globe Mfg. Corp., 34 NY2d 338, 341, 357 N.Y.S.2d 478, 313 N.E.2d 776 [1974] ), as are merely conclusory claims (Putrino v. Buffalo Athletic Club, 82 NY2d 779, 781, 604 N.Y.S.2d 539, 624 N.E.2d 676 [1993] ).
Pursuant to CPLR 3212(c) "If it appears that the only triable issues of fact arising on a motion for summary judgment relate to the amount or extent of damages, or if the motion is based on any of the grounds enumerated in subdivision (a) or (b) of rule 3211, the court may, when appropriate for the expeditious disposition of the controversy, order an immediate trial of such issues of fact raised by the motion, before a referee, before the court, or before the court and a jury, whichever may be proper" (CPLR 3212).
I. Termination of the North America Agreement
The Court turns first to whether the Mechoshade Agreement terminated as of May 31, 2019. Twitchell, in Motion Sequence 20, seeks declaratory judgment that the Mechoshade Agreement was never terminated; and summary judgment on its post-termination breach of contract claim. Mechoshade, in Motion Sequence 19, seeks partial summary judgment dismissing those portions of the claims that seek damages for any period of time after May 31, 2019, on the grounds that Mechoshade terminated its contractual relationship with Twitchell as of that date.
The Mechoshade Agreement and the Berman Agreement are identical except for geographic scope. The Mechoshade Agreement covers North America, while the Berman Agreement covers the rest of the world. The May 2018 notice referred expressly to the Berman Agreement, but the record demonstrates that the parties understood it to apply to both. For decades, they treated the two contracts as a single arrangement, and their conduct after May 2018 confirms that shared understanding.
Contract interpretation begins with the parties' intent, and the best evidence of intent is the contract itself (Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 [2d Cir. 2010] [quoting Rothstein v. Am. Int'l Grp., Inc., 837 F.3d 195, 205 [2d Cir. 2016]); see also Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc., No. 11-CV-4934, 2012 WL 760564, at *5 [E.D.NY Mar. 8, 2012]). Where the contract does not require particular language, "there are no magic [*5]words that need be uttered, so long as the notice evinces a clear intent to terminate" (Brockhaus v. Gallego Basteri, 188 F. Supp. 3d 306, 317 [S.D.NY 2016]; citing G.B. Kent & Sons, Ltd. v. Helena Rubinstein, Inc., 47 NY2d 561, 561 [1979]). Deposition testimony acknowledging a notice as termination is dispositive even if the notice does not use the word "termination" (Commercial Lubricants, LLC v Safety-Kleen Sys., Inc., 2018 WL 5045760, *13 [EDNY Oct. 17, 2018]).
Here, there is no dispute that the Agreement permitted either party to terminate automatic renewals by providing one year's notice of non-renewal (§ 11). Mr. Register testified at his deposition that he understood the May 23, 2018 letter to terminate the operative distribution agreement:
COUNSEL: . . . you understood that this was terminating both distribution agreements; correct?
REGISTER: There was only one agreement that we were operating under, and so it was my assumption that it was that agreement.
COUNSEL: And that agreement is the —
REGISTER: Mechoshade Agreement.
COUNSEL: And from your perspective, the contractual relationship that had bound MechoShade and Twitchell for more than 30 years when this termination notice was provided, that contractual relationship between MechoShade and Twitchell was being terminated; correct?
REGISTER: Yes. To be replaced with [a new agreement].
(NYSCEF Doc. No. 426 at 307—317).
This testimony, coupled with Twitchell's contemporaneous documents acknowledging an "end date of June 2019" and stating that all terms would become "null and void" at expiration, confirms that the parties understood the May 23, 2018 letter as notice of termination of the Mechoshade Agreement, effective May 31, 2019. None of Twitchell's arguments support the conclusion that the Mechoshade Agreement remained in force thereafter. Mr. Register acknowledged receipt of the notice immediately upon delivery, and by July 2018 he circulated materials identifying the contractual relationship would be terminated by June 2019. While Twitchell now denies that the notice terminated both agreements, after years of performance consistent with termination, it cannot refute the uncontroverted testimony of its own CEO acknowledging that he understood the letter to terminate the operative agreement (Commercial Lubricants, 14-CV-7483 [MKB], 2018 WL 5045760, at *13).
The fact that the termination notice did not contain the word "Mechoshade Agreement" is unpersuasive. Section 11 did not prescribe particular words or a formal process to effectuate termination (Brockhaus, 188 F Supp 3d 306, at 317).
No triable issues of fact exist as to whether the contractual relationship terminated as of May 31, 2019. As such, the Court finds that the May 23, 2018 letter served as notice of termination, and that the Mechoshade Agreement and the Berman Agreement were terminated effective May 31, 2019. Thus, the branch of Twitchell's motion (Motion Sequence 20) seeking a declaratory judgment that the Mechoshade Agreement was never terminated is denied. The branch of Mechoshade's motion (Motion Sequence 19) for summary judgment dismissing the claims for any period of time after May 31, 2019, or related relief, is granted on grounds that Mechoshade terminated its contractual relationship with Twitchell as of that date. The branch of Twitchell's motion seeking summary judgment on its post-termination breach claim is likewise [*6]denied, and the claim is otherwise rejected insofar as it rests on the premise that the Agreement remained in force after May 2019 (Motion Sequence 20).
II. Enforceability of the Restrictive Covenant
The next issue is whether the restrictive covenant in Section 11.1 may be enforced to prevent Twitchell from competing after termination. Section 11.1 bars Twitchell, upon termination, from selling the exclusive fabrics in the interior window shade market, including "slightly modified fabrics which are substantially similar," while permitting sales of new designs and sales outside the shading market. The Appellate Division held that the restrictive covenant is facially overbroad but may be capable of partial enforcement (Twitchell, 227 AD3d 45, at 62).
Restrictive covenants in ordinary commercial contracts are analyzed under a "rule of reason," which balances public policies favoring competition against those favoring freedom of contract (id., at 54; DAR & Assoc., Inc. v Uniforce Servs., Inc., 37 F Supp 2d 192, 197 [EDNY 1999]). Under this standard, courts consider: (1) whether the covenant protects a legitimate business interest, (2) whether the scope and duration of the covenant are reasonable, and (3) whether enforcement would impose an undue hardship on the restrained party (Twitchell, 227 AD3d at 54; BDO Seidman v Hirshberg, 93 NY2d 382, 392 [1999]). These factors are applied flexibly to the totality of the circumstances, with heightened deference to the parties freedom to contract (Twitchell, 227 AD3d at 54).
i. Legitimate Business Interest
Under the rule of reason, a restrictive covenant is enforceable only to the extent it serves to prevent unfair competition, not simply to eliminate competition altogether (id., at 54—55). The burden is on Mechoshade to prove they have a legitimate business interest. The Appellate Division held, "Twitchell has failed to establish that the restrictive covenant in the agreements do not protect Mechoshade's legitimate business interest in preventing unfair competition" (id. at 55). Rather, Mechoshade may have a legitimate business interest, and the burden is now on Twitchell to demonstrate that Mechoshade lacks a protectable interest.
Mechoshade claims a protectable interest because the exclusive fabrics were co-developed. The record shows that Mechoshade invested more than $100,000, commissioned a university study, and contributed decades of technical input and marketing efforts that helped create the solar roller shade market. Expert testimony further supports that designers and architects continue to specify the exclusive fabrics based on their composition, acoustic properties, and certifications. Twitchell does not refute that the fabrics were co-developed (NYSCEF Doc. No. 538). Thus, there are no issues of fact that the exclusive fabrics were co-developed.
The more difficult question concerns the restrictive covenants reach to "slightly modified" or "substantially similar" fabrics. Twitchell argues that the restrictive covenants reach to "slightly modified" or "substantially similar" fabrics is overbroad.
The Appellate Division cautioned that this language "may render the restrictive covenant overly broad," but concluded that "we cannot determine from this record the extent to which Mechoshade's alleged competitors sell fabrics that are substantially similar . . . Nor can we determine the extent to which Twitchell would be prohibited from competing at all in the window shade market" (Twitchell, 227 AD3d, at 57—58).
Twitchell's expert opines that commercial shade fabrics are largely commoditized, such [*7]that enforcing the covenant against "substantially similar" fabrics would foreclose Twitchell from the entire market. Mechoshade's expert disagrees, emphasizing distinctive qualities that set the exclusive fabrics apart.
Whether the restrictive covenant protects unique designs against misappropriation, or instead suppresses ordinary competition, presents a triable issue of fact.
ii. Undue Hardship
The Appellate Division noted that the restrictive covenant permits Twitchell to sell new designs outside its scope but held that the degree of hardship "must await a more developed record" (id. at 59). Twitchell contends that prohibiting "substantially similar" fabrics captures standard weaves, openness factors, and colors used industry-wide, effectively preventing it from competing. Mechoshade responds that shade fabrics differ in their fibers, yarns, construction, and finishing processes, and that Twitchell has already developed alternative fabrics and markets.
The record therefore presents issues of fact as to whether enforcement would impose undue hardship by foreclosing Twitchell from meaningful participation in the shading market.
iii. Geographic Scope, Duration, and Partial Enforcement
The Appellate Division has already held that the restrictive covenant is facially overbroad because it "lack[s] both geographic and temporal limitations, ostensibly applying indefinitely throughout the world" (id., 59 [2d Dept 2024]). Nevertheless, in the context of ordinary commercial contracts, courts may sever and partially enforce an overbroad covenant (id., at 60). Whether these covenants are capable of partial enforcement turns on a fact-specific inquiry into (i) whether the breadth was essential to the bargain, (ii) whether there was overreaching, (iii) whether there was coercive use of bargaining power, and (iv) whether there is other evidence of bad faith in the inclusion of the covenant (id., at 61; BDO Seidman, 93 NY2d 382, 394 [1999]).
The record shows that both parties were sophisticated businesses represented by counsel and negotiated at arm's length. There is no evidence of coercion or overreaching. As to essentiality, the Appellate Division has already held that it is not apparent from the face of the Agreements that unlimited scope was essential and held that this determination "must await a more fully developed record" (Twitchell, at 62).
On summary judgment, neither party has developed the factual record on the issue of partial enforcement. Accordingly, whether the covenants' facial overbreadth may be cured through severance or modification, and whether the unlimited scope and duration were essential to the parties' bargain, must be reserved for trial.
In conclusion, under the rule of reason, factual issues remain as to enforceability of the restrictive covenant, including whether Section 11.1 protects a legitimate business interest, whether enforcement would impose undue hardship, and whether its facial overbreadth may be cured through partial enforcement. Thus, the branch of Twitchell's motion (Motion Sequence 20) seeking a declaratory judgment that the restrictive covenant is unenforceable is denied; and the branch of Twitchell's motion (Motion Sequence 20) seeking summary judgment as to Mechoshade's counterclaims for (i) declaratory judgment that the restrictive covenant is enforceable; (2) damages for breach of contract based on Twitchell's alleged breach of the restrictive covenant; and (3) a permanent injunction enforcing the restrictive covenant, are [*8]likewise denied as they depend on threshold issues of enforceability.
III. Breach of Contract — Third-Party Purchases During Agreement Term
Twitchell also seeks summary judgment on its breach of contract claim, arguing that Mechoshade's repeated purchases from other suppliers violated Section 8.1 of the Agreements. To prevail on a breach of contract claim, a plaintiff must show the existence of a contract, its own performance, the defendant's breach, and resulting damages (Harris v Seward Park Hous. Corp., 79 AD3d 425, 426 [1st Dept 2010]).
Twitchell points to a history of purchases—including blackout products, microfilm, ultra-thin yarn, the 0900 series, EcoSheer, Acoustiveil, and other specialty fabrics—as evidence that Mechoshade failed to distribute Twitchell's fabrics exclusively. It contends that Section 8.2's limited exceptions cannot justify thousands of transactions spanning decades, particularly where comparable alternatives were available from Twitchell.
Mechoshade counters that Section 8.2 expressly permits third-party purchases where required by contract documents, necessary to secure a project, or necessary to preserve dealer relationships. It argues that Twitchell has not negated these exceptions and that many of the challenged purchases fell squarely within them.
The record reflects disputed facts as to which transactions, if any, met Section 8.2's exceptions, whether Twitchell could have supplied suitable alternatives, and whether Mechoshade obtained the required approvals. These factual disputes preclude summary judgment. Thus, the branch of Motion Sequence 20 for summary judgment on Twitchell's pre-termination breach of contract claim is denied.
IV. Unclean Hands and Prior Material Breach
Twitchell further argues that Mechoshade is barred from enforcing the restrictive covenant because of its own conduct. It advances two theories: (1) that Mechoshade's long history of third-party purchases constitutes unclean hands, rendering equitable relief unavailable; and (2) that those purchases amounted to a prior material breach, precluding enforcement of the covenant.
i. Unclean Hands
The doctrine of unclean hands prevents a party from obtaining equitable relief where it has itself acted inequitably in connection with the subject matter of the litigation (DeCapua v Dine-A-Mate, Inc., 292 AD2d 489 [2d Dept 2002]). Twitchell contends that Mechoshade's decades of purchases from other suppliers, in violation of Section 8.1, foreclose its attempt to enforce Section 11.1 against Twitchell.
Whether those purchases were in fact prohibited, or excused by Section 8.2, presents triable issues of fact. So too does the question of whether they bear sufficiently on the equitable relief sought. Accordingly, the branch of Twitchell's motion for summary judgment declaring that the restrictive covenant is unenforceable under the doctrine of unclean hands is denied (Motion Sequence 20).
ii. Prior Material Breach
A breach is material only if it defeats the purpose of the contract (Smolev v Carole Hochman Design Grp., Inc., 79 AD3d 540, 541 [1st Dept 2010]; see Robert Cohn Assocs., Inc. v [*9]Kosich, 63 AD3d 1388, 1389—90 [3d Dept 2009]).
Twitchell contends that Mechoshade's persistent third-party purchasing defeated the exclusivity objective of the Agreements and thereby bars enforcement of Section 11.1. Mechoshade responds that its purchases were narrowly tailored and justified under Section 8.2.
The record shows disputed facts as to the number, purpose, and effect of the purchases, and as to whether they went to the essence of the Agreements. On this record, the Court cannot determine materiality as a matter of law (Motion Sequence 20). Thus, the branch of Twitchell's motion for summary judgment that the restrictive covenant is unenforceable under a prior material breach theory is denied. Accordingly, it is hereby,
ORDERED, that the branch of Motion Sequence 19 by Mechoshade for partial summary judgment dismissing those portions of the claims in the amended complaint that seek damages for any period of time after May 31, 2019, or related relief, is granted on grounds that Mechoshade terminated its contractual relationship with Twitchell as of that date; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking declaratory judgment that the agreement was never terminated is denied; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking declaratory judgment that that the restrictive covenant is unenforceable is denied; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking summary judgment as to liability on its pre-termination breach of contract claim, and ordering an immediate trial on damages as permitted by CPLR § 3212(c), is denied; and it if further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking summary judgment on its post-termination breach claim is denied, and the claim is otherwise rejected insofar as it rests on the premise that the Agreement remained in force after May 31, 2019; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking summary judgment that the restrictive covenant is unenforceable under the doctrine of unclean hands is denied; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking summary judgment that the restrictive covenant is unenforceable under a prior material breach theory is denied; and it is further
ORDERED, that the branch of Motion Sequence 20 by Twitchell seeking summary judgment as to Mechoshade's counterclaims are denied.
Any and all other relief requested and not granted is denied. This constitutes the Order of the Court.
DATE 9/3/2025
LEONARD LIVOTE, J.S.C.